# LAWRENCE SHERROD, JR. *v.* STATE OF MARYLAND

[No. 125, Initial Term, 1967.]

*Decided June 26, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and MENCHINE, J., Associate Judge of the Third Judicial Circuit, specially assigned.

*Lawrence B. Coshnear* for appellant.

*Norman Polski, Special Attorney,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City, and Bernard J. Dischinger, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

The appellant, Lawrence Sherrod, Jr., was convicted by Judge J. Gilbert Prendergast, sitting in the Criminal Court of Baltimore, of assault with intent to murder, common law assault, carrying a concealed deadly weapon, discharging a weapon in violation of the Baltimore City Code and possession of lottery slips. He was sentenced to serve a total of fifteen years in the Maryland Penitentiary. He now appeals to this Court on all convictions except his violation of the Baltimore City Code.

On June 11, 1965, at approximately 10:49 p.m., Walter Dickey was standing on the front steps of 1024 Valley Street with his nephew, Roosevelt Ward. Dickey's sister, Alberta Vincent, and his niece, Bertha Ward, were inside the house. Next door at 1022 Valley Street sat another nephew, Willie Ward, with his acquaintance, Ernest Lee, standing nearby. All of these persons testified at the trial except Ernest Lee.

Walter Dickey testified that earlier that day Sherrod had given him "a dollar," that Sherrod came to his house and asked him for his dollar back, that he told Sherrod he didn't have it, and that Sherrod then "walked in back of me and shot me." Dickey stated there was no argument or fight and he had no weapon immediately preceding the assault. Roosevelt Ward corroborated the fact there was no scuffle or fight beween Dickey

and Sherrod, but while they were having a "small argument" over money, Sherrod pulled out a gun and "started shooting." He also stated Dickey had no weapon. The record indicates Dickey was shot twice and received hospital treatment from June 12 through June 27, 1965.

Alberta Vincent testified that she was inside the house at 1024 Valley Street at the time of the shooting and that she was struck in the leg by a bullet which required she be hospitalized from June 12 through June 20, 1965. She stated that she did not see the shooting or know what was going on outside her house, but that she knew Sherrod shot her because she knew he shot her brother.

Sherrod was not arrested until January 23, 1966. He was brought to the Central Police Station and while being booked, he was searched by Officer Bradshaw. The officer testified that he found two slips of paper in his rear pocket and that, notwithstanding the fact he was not an expert in numbers games, he recognized them as numbers slips because in the course of his work he had seen many of the three digit slips with the number circled at the side indicating the amount played. The State offered further testimony but the Court was satisfied that the officer was qualified to identify the slips and they were admitted into evidence.

Also present at the station was Sergeant Schmitt who testified that he took part in an interrogation of the appellant and that he received a verbal statement from him. The substance of this statement was that Dickey owed Sherrod some money and while they were discussing this debt, Dickey pulled a knife whereupon Sherrod drew his .32 caliber automatic pistol, pulled the trigger once and all nine shots fired. The statement continued that Sherrod had no intention of shooting the woman, that he threw away the gun and as to the numbers slips, that he intended to play them but did not take numbers himself. Sergeant Schmitt stated that Sherrod related the same story again on the following day.

The defense produced two witnesses: the appellant and Willie Ward. The appellant admitted being asked to sign a statement but said that he refused. What really happened, he testified, was that he gave Dickey a dollar and while doing so revealed a roll

of bills whereupon Dickey stood up, cursed, and pulled a knife. Appellant said he backed away from Dickey, reached for his pistol and fired unknowingly. Later he testified he found it necessary to shoot Dickey "because he wouldn't stop approaching me with the knife." Sherrod denied ever having possessed any lottery slips. Willie Ward agreed that Sherrod shot Dickey over a "little argument" about money, but that Dickey merely stood up and Sherrod shot him. He testified he saw no knife in Dickey's possession. As Ward was a witness for the defense, appellant's counsel attempted to impeach his testimony by reason of "surprise," but was not successful because upon the Court's inquiry, counsel admitted that Ward told him the same story earlier that day, but that Sherrod wanted him to testify anyway.

## I

In his first contention, the appellant alleges that the admission of his oral statement into evidence constituted reversible error under the decision of *Miranda v. Arizona,* 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694 (1966). In *Johnson v. New Jersey,* 384 U. S. 719, 86 Sup. Ct. 1772, 16 L. Ed. 2d 882 (1966), the Supreme Court held that *Miranda, supra,* need apply only to those cases in which trial began after June 13, 1966. In *Westfall v. State,* 243 Md. 413, 221 A. 2d 646 (1966), the Court of Appeals held that it would not apply *Miranda, supra,* retroactively. Thus, since appellant's trial was held on April 27 and 28, 1966, it is clear the principles enunciated in *Miranda supra,* are not applicable in this case.

The standard, therefore, by which to measure the admissibility of an extra-judicial statement (or confession) is whether the statement was made freely and voluntarily and at a time when the accused knew and understood what he was saying. *Hadder v. State,* 238 Md. 341, 209 A. 2d 70 (1965) ; *Wiggins v. State,* 235 Md. 97, 200 A. 2d 683, cert. den. 379 U. S. 861 (1964). The appellant admits that the statement was properly admitted under the law as it existed prior to *Miranda* (relying, of course, on the belief *Miranda* was applied retroactively) and we find nothing in the record that might suggest the statement was improperly admitted.

438

## II

Appellant's second contention is that the admission of the alleged lottery slips into evidence was reversible error because they were "fruits" of an illegal arrest and because they were not properly identified by expert testimony as lottery slips.

In regard to the point of illegal arrest, a review of the record discloses that no objection was ever made to the introduction of both arrest warrants or the lottery slips on this ground. During the State's direct examination of Officer Bradshaw, the witness stated he found two numbers slips in appellant's right rear pants pocket. Defense counsel thereupon interjected: "Just a minute, Officer Bradshaw, do you know how he was brought in? Was it on a warrant?" The officer replied: "He was brought in on a warrant, yes * * *." Whereupon defense counsel stated: "I'll object unless it is clarified." The State then proceeded to clarify the point and moved for their introduction into evidence. Defense counsel made no specific objection, but inquired on cross-examination only as to Officer Bradshaw's qualifications to identify the pieces of paper as numbers slips. No further issue was made of the arrest.

Under the provisions of Maryland Rule 1085, this Court will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court. *Rose v. State,* 240 Md. 65, 212 A. 2d 742 (1965) ; *Kares v. State,* 215 Md. 396, 137 A. 2d 712 (1958). We, therefore, have nothing before us upon which we can make a ruling. *Davis v. State,* 189 Md. 269, 55 A. 2d 702 (1947). It may be added, however, that we see nothing in the record to show that the officer did not have reasonable grounds for belief in the guilt of the accused. See *Scarlett v. State,* 201 Md. 310, 93 A. 2d 753 (1953).

As to the qualifications of a witness to express an opinion relating to matters in evidence, the rule is that how much knowledge a witness must possess before he is entitled to express an opinion is a preliminary question which is left largely to the discretion of the trial court, and ruling thereon will not be disturbed on appeal unless clearly erroneous as an abuse of discretion. We find from a review of the record no such abuse.

### III

Appellant's next contention is that his motion for judgment of acquittal to the charge of carrying a concealed weapon should have been granted at the close of the State's case. Maryland Rule 755 (b) provides that "If the motion is not granted at the close of the evidence offered by the State, the accused may offer evidence without having reserved the right to do so, but by so doing, he withdraws his motion." However, since this is a non-jury case we may consider whether the trial court had before it sufficient evidence to determine whether the gun was, in fact, concealed. A review of the record shows that there was ample testimony from the witnesses produced by the State for the lower court to so find. In addition, the appellant took the witness stand in his own behalf and by his own statements corroborated the testimony of the State's witnesses. We, therefore, find no merit in appellant's contention.

### IV

Appellant's counsel notes under the fourth category entitled "Appellant's Other Issues, Presented in Proper Person," that he has been asked by appellant to present certain additional issues.

His first contention is that the verdict was against the evidence and the weight of the evidence. This Court does not review the weight of the evidence. Of course, when a case has been tried by the lower court without a jury, this Court will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses. *Tucker v. State,* 244 Md. 488, 501, 224 A. 2d 111 (1966) ; *McCray v. State,* 236 Md. 9, 15, 202 A. 2d 320 (1964). Accordingly, in addition to our prior holdings in contentions II and III, we find no such error by the trial court.

Next he contends he requested a jury trial and this was not granted. The evidence discloses that on February 23, 1966 pleas of not guilty and a request for a court trial were entered as to each indictment. Thereafter, through counsel, the same pleas were entered and a court trial was requested. No objec-

tion was made by appellant to his trial by the court either on arraignment or on either day of his two-day trial. Under Maryland Rule 1085, the point cannot be raised here for the first time.

He contends his trial counsel was incompetent. The record does not show appellant ever complained of his representation at his trial in the court below so he may not raise this point here for the first time. Maryland Rule 1085. In any event, however, the complaint is not supported by the transcript of the record of the trial.

Appellant contends the State failed to assign him counsel at the time of his arrest. No cases have been cited in support of this position. The Court of Appeals has fully considered this issue as applied in *Escobedo v. Illinois,* 378 U. S. 478, 84 Sup. Ct. 1758, 12 L. Ed. 2d 977 (1964). (The procedural safeguards of *Miranda v. Arizona, supra,* as we have already noted, do not apply.) *Koprivich v. State,* 1 Md. App. 147 (1967), and cases cited therein. In this case there was no request to call counsel until after he made his statement to Officer Schmitt. The officer testified that he asked appellant if he would like to reduce his statement to writing and he said he "would like to consult with his attorney first." He was thereupon placed in the cellblock and given the opportunity to call counsel. This contention therefore has no merit.

Finally, appellant contends the concealed weapon charge should have been merged into the charge of assault with intent to murder. In *Veney v. State,* 227 Md. 608, 614, 177 A. 2d 883 (1962), it was held that the essentials needed to be proven by the State were entirely different in each charge. Furthermore, the lesser offense was not a "necessary ingredient" of the larger offense.

For the aforegoing reasons, the judgment of the lower court is affirmed.

*Judgment affirmed.*