## THEODORE SHERMAN MULLANEY, JR., *v.* STATE OF MARYLAND

[No. 379, September Term, 1967.]

*Decided October 9, 1968.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Robert Eugene Smith* for appellant.

*Fred Oken, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *E. Harrison Stone* and *Charles Foos, Assistant State's Attorneys for Baltimore County,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant was found guilty by a jury in the Circuit Court tor Baltimore County of possession and control of narcotics (cannabis), and was sentenced by the court to five years under the jurisdiction of the Department of Correction. On this appeal he contends that the trial court erred when it denied his pretrial motion to suppress evidence seized at the time of his arrest, and in admitting such evidence over his objection at the trial.

I

*The Motion To Suppress Evidence*

Appellant moved to suppress as evidence in the case approximately eight pounds of cannabis (marihuana) and other related tangible items seized at the time of his arrest, as well as certain incriminatory admissions which he made to the police shortly after his arrest. The motion was based on the ground that appellant had been unlawfully arrested and that the warrantless search of his room and person, and the taking of his oral statements were illegal as comprising the fruits of an illegal arrest in violation of the Fourth Amendment to the Federal Constitution.

A hearing was held on appellant's motion out of the presence of the jury, at which time Lieutenant Thomas Mitchell of the Baltimore County Police Bureau, Narcotics Squad, testified that at 9:30 p.m. on August 2, 1967, he "received information" while at his home from Detective Kratsch of the Baltimore City Narcotics Squad, as the result of which he went to the Penn Motel in Baltimore County, arriving there at 10:00 p.m.; [1] that he there checked the register "which verified some of the information that I had received from the City"; that he ascertained that appellant was registered in room #222 and that while he did not know him, he had his description as being a white male, twenty to twenty-two years old, 5' 8", 140 pounds, long brown hair and bearded; that he went to his room, knocked on the door and, after failing to receive an answer, he left and kept the room under surveillance; that fifteen minutes later, a person answering appellant's description, and two other men, entered room #222; that after waiting approximately fifteen minutes, he (Lieutenant Mitchell) and two other police officers, knocked on the door of appellant's room; that in response to an inquiry from within the room as to "who was there," he (Mitchell) said "Tommy Carroll"; that one of the occupants of the room, later identified as Richard Mainolfi, then opened

---

1. The court sustained appellant's objection to Lieutenant Mitchell relating the substance of the information that he had received from Detective Kratsch. For reasons hereinafter set forth, the court's ruling in this regard was erroneous.

the door about eight to ten inches, at which time he (Mitchell) "flashed" his identification card at Mainolfi, observing at the same time that the room was "a one bedroom affair," that a man was lying on a bed smoking a cigarette, "his hands cupped around his face in such fashion where you would smoke a marihuana cigarette," that three cigarettes were beside him on the bed "rolled as a marihuana cigarette," and that the room was "full of smoke" which he (Mitchell) knew from his experience to be marihuana smoke; that Mainolfi tried to slam the door shut but he (Mitchell) put his "foot in the door" and his "face in the opening," and also "put some pressure on the door;" that thereafter Mainolfi "permitted us entry"; and that they then seized from within the room a number of marihuana cigarette butts, a briefcase containing three blocks of marihuana kilo and another block of marihuana then being processed.

Lieutenant Mitchell had neither a search warrant nor an arrest warrant when he went to the motel. He testified on cross-examination that his purpose in stating that he was Tommy Carroll was "to get them to open the door." [2] He further testified that he felt he had sufficient cause to enter the room based on "the information and the specific way it was received by Detective Kratsch, and the description of the subject and the subject was there"; that he had "the information and the detail of the information how it was secured from Detective Kratsch, whom I'm very familiar with and with whom I have worked on a lot of occasions, and he gave me this information"; and that he knew that Kratsch's information had been obtained from an informer of whose reliability he (Mitchell) had no knowledge.

The court denied appellant's motion to suppress, holding that the evidence indicated that Mitchell "had received from Officer Kratsch information that the defendant was involved in transportation and possession of marihuana," and that it was with "that information at hand" that Mitchell went to the motel, having theretofore been provided with appellant's detailed description. The court ruled, alternately, that even if Lieutenant Mitchell did not have probable cause to arrest at the time he went

---

2. No evidence was adduced at the suppression hearing to shed light on the identity of Tommy Carroll.

to the motel, he thereafter acquired probable cause when the door was opened and he could see that marihuana was possessed by the occupants of the room.

The constitutional validity of the search and seizure manifestly depends upon the constitutional validity of appellant's arrest. And whether an arrest for a felony without a warrant is constitutionally valid necessarily turns upon whether, at the moment the arrest was made, the arresting officer or the police acting as a team had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing a felony.[3] *McCray v. Illinois,* 386 U. S. 300; *Beck v. Ohio,* 379 U. S. 89; *Draper v. United States,* 358 U. S. 307; *Farrow v. State,* 233 Md. 526; *Simms v. State,* 4 Md. App. 160. Where, as here, the constitutional validity of the warrantless arrest was properly challenged by a pretrial motion to suppress evidence, it is the function of the court to determine for itself the persuasiveness of the facts relied upon by the police to show probable cause for the arrest —a function which it manifestly cannot perform unless it is informed of the facts upon which the arresting officer acted. See *Beck v. Ohio, supra; Giordenello v. United States,* 357 U. S. 480; *Farrow v. State, supra; Edwardsen v. State,* 231 Md. 332. Evidence to show the basis upon which the arresting officer acted in making the arrest, including the nature and details of information received from other law enforcement officers and/or informants, is not only relevant and admissible on the issue of probable cause, but must affirmatively be shown if the State is to carry its burden of proving the legality of the arrest. See *Hopkins and Terry v. State,* 239 Md. 517; *Veihmeyer v. State,* 3 Md. App. 702; *Scott v. State,* 3 Md. App. 429. Where the arrest is initiated on hearsay information received from an informant, the State, to establish its legality where challenged, must sufficiently inform the trial judge of some of the under-

---

3. Where the arrest is made for a misdemeanor, the test to determine the legality of the arrest is whether the misdemeanor was committed in the officer's presence. *Robinson v. State,* 4 Md. App. 515; *Shelton v. State,* 3 Md. App. 394.

lying circumstances from which the informant concluded that a crime was being or had been committed by the person to be arrested, and some of the underlying circumstances from which the police concluded that the informant, *whose identity need not be disclosed*,[4] was credible or his information reliable. *Mc-Cray v. Illinois, supra; Beck v. Ohio, supra.*

Thus, in *Draper v. United States, supra,* the Supreme Court held that in testing the sufficiency of probable cause for a warrantless arrest, the arresting officer may rely upon information received through an informant, rather than upon his direct observations, so long as the informer's statement is reasonably corroborated by other matters within the officer's knowledge. In that case, a "special employee" of the Bureau of Narcotics (in reality a paid government informer), who had previously given reliable information, told federal agents that the defendant, whom he described, was peddling narcotics, and that he would be at a designated place on a designated date with a tan zipper bag and would be carrying narcotics. The defendant, being observed by federal agents under conditions which accorded precisely with this information, was arrested and the arrest was upheld solely upon the informant's detailed statement that the defendant was peddling narcotics, as corroborated by the fact that the informant's description of the defendant's appearance, and of where he would be at a particular time—matters in themselves totally innocuous — agreed with the arresting officer's observations (thus providing a substantial basis for crediting the hearsay).

In *Beck v. Ohio, supra,* the defendant was arrested without a warrant for violating the gambling laws. By pre-trial motion the defendant moved to suppress evidence seized from his person at the time of his arrest. To establish the legality of the arrest the State called the arresting officer as its sole witness. He testified that he had "a police picture" of the defendant and

---

4. The Supreme Court made it crystal clear in *McCray v. Illinois, supra,* that there is no requirement, constitutional or otherwise, which compels disclosure of the informant's identity on a hearing to determine the question of probable cause for an arrest or search. Cf. *Roviaro v. United States,* 353 U. S. 53, involving the disclosure of an informant's identity at the trial when the issue is the guilt or innocence of the accused.

"knew what he looked like," that he knew the defendant had "a record in connection with clearing house and scheme of chance," that he had "information," that he had "heard reports," that "someone specifically did relate that information," and that he "knew who that person was." The Supreme Court, in concluding that the State failed to establish probable cause for the arrest, held that there was "nowhere in the record any indication of what 'information' or 'reports' the officer had received, or, * * * from what source the 'information' and 'reports' had come"; that all the trial court was told "was that the officers knew what the petitioner looked like and knew that he had a previous record of arrests or convictions for violations of the clearing house law," but that the record did not contain "a single objective fact to support a belief by the officers that the petitioner was engaged in criminal activity at the time they arrested him." The court concluded that on the record before it, the State failed to make the required showing of "what the informer actually said, and why the officer thought the information was credible."

In *McCray v. Illinois, supra,* the defendant was arrested on the street without a warrant for possessing narcotics. A motion to suppress the evidence having been filed, it was incumbent upon the State to establish probable cause for the arrest. To this end the two arresting officers each testified in considerable detail that they had talked with an informant on the morning of the arrest who had told them that defendant was then selling narcotics at a particular place and at a particular time; that the informant pointed out the defendant to the officers; and that when the defendant saw the police car, he hurriedly walked away. The officers testified that they had been acquainted with the informant for over a year, that he had supplied them with information about narcotics activities over fifteen times, and that this information had proved accurate and resulted in numerous arrests and convictions, which the officers specifically delineated in open court. In upholding the legality of the arrest, the court found that each of the officers had testified with specificity as to what the informer actually said and why the officers thought the information was credible.

In capsule form then the correct rule is as stated in *Hund-*

*ley v. State,* 3 Md. App. 402, at page 405, namely that information furnished to a law enforcement officer by an informer, together with the officer's personal knowledge, may serve as the basis of sufficient probable cause for a warrantless arrest for a felony and search incident thereto if the trial court is informed "with specificity what the informer actually said, and why the officer thought the information was credible, and the court is satisfied such information was sufficiently reliable and reasonably trustworthy to give the officer, as a prudent man, probable cause to believe that the accused had committed or was committing a felony." Compare *United States v. Ventresca,* 380 U. S. 102; *Rugendorf v. United States,* 376 U. S. 528, and *Aguilar v. Texas,* 378 U. S. 108, all cases focusing on the legality of search warrants issued on information received from informants.

Applying these principles to the evidence introduced at the hearing on the appellant's motion to suppress, we hold that the State failed to show probable cause for the arrest prior to the time that the officers knocked on the door to appellant's room. All that the evidence shows is that Lieutenant Mitchell received undisclosed and unspecified information from a reliable police officer, as a result of which he immediately went to the Penn Motel, ascertained that appellant, whose description he somehow had, was registered there, and observed him and two others enter his room at the motel. There was no evidence to show that Lieutenant Mitchell had been informed by anyone or that he had any personal information on his own, that appellant had committed or was committing a crime, or even that he was suspected of committing a crime. It is, of course, possible that the police, acting as a team, had probable cause to make the arrest prior to the time that they knocked on appellant's door. See *Jones v. State,* 242 Md. 95. But the State's failure to prove it by proper evidence at the suppression hearing compels us to conclude that the trial judge erred in his ruling that probable cause existed for the arrest prior to the time that Lieutenant Mitchell knocked on appellant's door.

We agree, however, with the alternative conclusion reached by the trial judge at the conclusion of the hearing on the motion to suppress, namely that Lieutenant Mitchell had probable cause to arrest appellant when the door to his room was opened

and the officer, without making an entry, instantly observed that the room was full of marihuana smoke, that there were marihuana cigarettes in plain sight on the bed, and that one of the occupants of the room was smoking a cigarette in the distinctive fashion of a marihuana smoker. As heretofore indicated, the legality of the arrest is measured by the existence of probable cause at the time it is made and we think it clear that in the situation in which Lieutenant Mitchell found himself when the door to the room was opened, he had at that moment probable cause to believe that a felony was then being committed. That the smell of distinctive odors can constitute evidence of crime and of probable cause is well settled. *United States v. Ventresca*, 380 U. S. 102; *Rugendorf v. United States*, 376 U. S. 528; *Johnson v. United States*, 333 U. S. 10. This evidence, coupled with the visual observations made by Lieutenant Mitchell simultaneous with the opening of the door and prior to his entrance into the room, clearly provided, in our judgment, probable cause upon which the felony arrest could lawfully be based. The mere fact by itself that Lieutenant Mitchell may have intended to make an arrest when he knocked on the door of appellant's motel room does not without more, constitute the officer a trespasser, there being no right of a citizen, constitutional or otherwise, which immunizes him from having a policeman knock on his door during reasonable evening hours. And as Lieutenant Mitchell did not break or physically force open the door to appellant's room, the rule requiring that police officers seeking to make an arrest must (with certain exceptions) give proper notice of their purpose and authority before forcefully effecting entry is not applicable to the facts of this case, there being no breaking involved, constructive or actual. See *Henson v. State*, 236 Md. 518; *Berigan v. State*, 2 Md. App. 666. The Supreme Court recently observed in *Sabbath v. United States*, 391 U. S. 585, that entry into private premises obtained by ruse has been viewed as not involving a "breaking," the rule being that entrance gained by the use of deception for the purpose of effecting an arrest is constitutionally permissible so long as force is not applied. *Smith v. United States*, 357 F. 2d 486 (5th Cir.) ; *Davis v. United States*, 327 F. 2d 301 (9th Cir.) ; *Leahy v. United States*, 272 F. 2d 487 (9th Cir.) ; *United*

*States v. Locklear,* 237 F. Supp. 895 (N. D. Calif.). See particularly *Dickey v. United States,* 332 F. 2d 773 (9th Cir.), where, as here, an officer without a warrant gained entry into the defendant's hotel room upon the misrepresentation that he was a person known to the defendant. The fact then that the door to appellant's room was opened in response to Lieutenant Mitchell's deception that he was Tommy Carroll does not invalidate the arrest under the circumstances of this case.

Appellant places reliance on *Johnson v. United States,* 333 U. S. 10. In that case federal officers received information from a confidential informer that "unknown persons" were smoking opium in a designated hotel and that it could be smelled in the hallway. Federal agents went to the hotel, smelled the odor of burning opium and traced it to a particular room. Without knowing who was the occupant or occupants of the room, the officers knocked on the door and when the defendant opened it, they entered and initiated a search for incriminating evidence. The court held that the entry, search, seizure and arrest were illegal, finding that the validity of the arrest depended upon the fact that the defendant was the sole occupant of the room, a fact ascertained by the officers only after they had effected entry into the room under color of legal authority. Unlike *Johnson,* there was no entry made into the appellant's room until after the arresting officer had probable cause, supported by visual observations in addition to smelling the burning marihuana, to believe that a felony was being committed, and that appellant, previously known to him to be within the room, was one of the felons. Probable cause to arrest then existing, the evidence subsequently seized was properly admissible.

## II

### *The Evidence of Probable Cause to Arrest Adduced at Trial*

At the trial, Tommy Carroll testified that on August 2, 1967 at approximately 3:30 p.m. he drove appellant to the Penn Motel and that the appellant then had a suitcase with him and said it contained marihuana.

Lieutenant Mitchell testified to the same facts that he testified to at the hearing on the motion to suppress, but with these

additions: (a) that Officer Kratsch told him that an informant had told Kratsch that appellant was at the motel "with 20 pounds of marihuana;" (b) that he knew Kratsch wouldn't call him at his home on a matter requiring him to leave "unless it was positive information," and that he (Mitchell) knew from his long acquaintance with Kratsch that there would be "something to" Kratsch's information; (c) that he used Tommy Carroll's name "on information received" from Officer Kratsch and he did so to gain entrance into the room knowing that if he announced his true identity, the occupants wouldn't have let him in; and (d) that when he (Mitchell) went to appellant's door he had a uniformed police officer with him "so when he did open the door there would be no mistake that we were police." Mitchell testified that he did not know the informer's name until after the arrest was made. The informer, a young juvenile, was identified by name at the trial.

The trial judge, in overruling appellant's trial objection to the admission of the incriminating marihuana evidence found in the motel room, stated that the arrest was lawful because Kratsch was himself a reliable informer; that he in turn had received the information from a named informer, and that it was not essential for the State to show other than that Kratsch was a reliable person and that the information furnished by him to Lieutenant Mitchell in other cases had been reliable.

Without question, the observations of fellow law enforcement officers constitute a reliable basis in the assessment of whether probable cause to arrest exists. *United States v. Ventresca, supra; Rugendorf v. United States, supra.* Equally well settled is the proposition that probable cause to arrest may be based on information collectively within the knowledge of the police. *Farrow v. State, supra.* In *People v. Horowitz,* 233 N. E. 2d 453, the Court of Appeals of New York stated at page 455 that "it is not necessary for the officer making the arrest to know of the reliability of the informer or to be, himself, in possession of information sufficient to constitute probable cause provided that he acts upon the direction of or as a result of communication with a superior or brother officer or another police department provided that the police as a whole were in possession of information sufficient to constitute probable cause to make the

arrest." As *Horowitz* indicates, however, the record must show that the law enforcement officers had facts before them sufficient to indicate that the informer, whether named or anonymous, was reliable, or that the police had other information not derived from the informer, which was sufficient, in itself, to constitute probable cause. Compare *People v. Holup,* 289 N. Y. S. 2d 19, a case holding that while the arresting officer was told by his superior officer that the defendant was an armed robber, and that weapons could be found in his room, since the superior officer did not testify, the warrantless arrest was unlawful as probable cause had not been demonstrated on the record.

In *Draper* and *McCray,* the informer was himself the source of the information that a crime was being committed by the person to be arrested, and the informer's reliability was clearly established by the evidence. Here, the true source of the information was not Officer Kratsch. Insofar as the record shows, he was but a conduit of the information, and while his reliability was established, the reliability of his informer was not. The State's failure to establish the reliability of Kratsch's informant is unexplained in the record. Under these circumstances, we entertain considerable doubt that, even with the additional evidence adduced at the trial itself, the arrest can be justified as one based on the existence of probable cause prior to the time that Lieutenant Mitchell knocked on the door to appellant's room.[5]

We hold, however, that the evidence, both at the suppression hearing and at the trial itself, did demonstrate the existence of probable cause for Lieutenant Mitchell to make the arrest at the time that the door was opened to appellant's room and, consequently, the arrest being lawful, the search and seizure made incident thereto were likewise lawful, and the incriminating evidence was properly introduced. In so concluding, we have considered appellant's argument that the trial court erred in per-

---

5. Having failed to establish such probable cause at the suppression hearing, a question arises as to whether the State should be afforded another opportunity to do so at the trial before the jury. As we find probable cause to arrest to exist for other reasons, we need not consider the question on this appeal.

mitting Lieutenant Mitchell to testify that it was marihuana smoke that he smelled in appellant's room. We think the record shows that Lieutenant Mitchell was an experienced police officer with a substantial background in the field of narcotics and was qualified to express an opinion that the smoke he smelled and observed emanated from the burning of marihuana. See *Sherrod v. State,* 1 Md. App. 433.

## III

### *Admissibility of Appellant's Incriminating Admissions*

The evidence adduced both at the hearing on the motion to suppress and at the trial before the jury showed that immediately following his arrest, the police gave appellant the specific four-fold warning required under *Miranda v. Arizona,* 384 U. S. 436. The police then specifically inquired whether the appellant, "having these rights in mind," wanted to talk to them. Detective Thomas Manzari, one of the arresting officers, testified that appellant "shook his head like he understood"; that "he just nodded his head in a yes position," but that he said nothing. Lieutenant Mitchell testified that appellant made no request at his motel room to call an attorney, and while he appeared sullen and angry, he was not under the influence of narcotics. The officers placed appellant in a police car and although they "needled" him about the loss he would sustain and asked him questions, he didn't respond at all until, while on the way to the police station, he stated in response to a question that the marihuana belonged to him and that he had just arrived from California with it.

Appellant contends that after the *Miranda* warnings were read to him, he was not afforded an opportunity to make a phone call to an attorney before the officers questioned him in the police car. He further contends that he was under the influence of narcotics when questioned and that his incriminating statements were therefore involuntarily made and should not have been admitted in evidence at the trial. These objections were made both at the suppression hearing and at the trial and, although only obliquely mentioned, the broader objection was in substance made that there was no waiver of his *Miranda*

rights prior to the time that the officers questioned him in the police car.

As there is no evidence in the case to show that appellant was under the influence of narcotics when arrested, or that he made any request to call an attorney before being questioned in the police car, we find no basis for excluding the incriminating admissions on these grounds. But questioning appellant in a police car under the circumstances here involved clearly constitutes "custodial interrogation" within the meaning of *Miranda* (*Myers v. State,* 3 Md. App. 534), and calls in question the applicability of the holding in *Miranda* that "a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained," nor will "failure to ask for a lawyer * * * constitute a waiver" (at page 475). *Miranda* made it quite clear that, if after the warnings required by that decision have been given, custodial interrogation is undertaken without the presence of an attorney, and a statement is obtained, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self incrimination and his right to retained or appointed counsel" (at page 475). And equally plain from *Miranda* is the flat holding at pages 475 and 479 that no evidence obtained as a result of a custodial interrogation can be used against an accused unless and until the prosecution demonstrates a waiver of constitutional rights within the meaning of *Johnson v. Zerbst,* 304 U. S. 458, a case which holds that waiver of a fundamental constitutional right is ordinarily "an intentional relinquishment or abandonment of a known right or privilege," the determination of which "must depend in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." As we recently stated in *Brown v. State,* 3 Md. App. 313, 321, the ultimate determination of whether the appellant knowingly and intelligently waived his *Miranda* rights before making a statement is governed by whether the particular facts and circumstances involved in the case are such as demonstrate an intelligent and intentional relinquishment or abandonment of a known right or privilege. But it has been held that an ex-

press statement by an accused undergoing custodial interrogation to the effect that he understood his *Miranda* rights, and nevertheless wanted to make a statement is not an essential link in the chain of proof of waiver. *United States v. Hayes,* 385 F. 2d 375 (4th Cir.) ; *Brown v. State, supra.*

The record before us discloses that appellant was twenty years of age and a high school graduate. As heretofore indicated, there was no evidence that he was under the influence of narcotics or that his intellectual endowments were in any way impaired at the time of his interrogation. There was no evidence that he was subjected to physical coercion during his interrogation or that he was subjected to any psychological coercion at any time beyond the fact that the police "needled" him after his arrest. Appellant had been caught red-handed by the police, knew that the incriminating evidence had been seized from his motel room, and undoubtedly appreciated the magnitude of his predicament. He was subjected to interrogation in a police car rather than in the more compulsive atmosphere of the station house. And from the testimony, the trier of fact could find that appellant understood the import of the *Miranda* warnings and knew that he had a right to remain silent and to have counsel present during any police interrogation.

Despite the fact that the testimony does not show an express waiver of appellant's right to remain silent and to counsel, we hold that the totality of the circumstances—the attendant facts of the case—are such as implicitly show that appellant voluntarily and intelligently relinquished these rights when he made his incriminating admissions. See *United States v. Hayes, supra; Brown v. State, supra; Scott v. State,* 3 Md. App. 429. We therefore find no error in their having been admitted in evidence.

## IV

### *The Court's Instructions to the Jury*

Appellant contends that the trial judge erred in three particulars in his instructions to the jury. As we have by our opinion heretofore approved the substance of two of the challenged instructions, we need not further discuss them. The remaining objection is based on appellant's argument that the trial judge erred

in instructing the jury that probable cause to make an arrest is made out if "the police team working on a particular case had accumulated sufficient information to furnish probable cause for a reasonable man to believe that the alleged crime had been committed, and that there was probable cause to believe that the defendant was involved therein, there was sufficient cause for an arrest;" [and that] "It is the sufficiency of the information which the police organization working as a team of which the arresting officer is a part which is determinative." The basis of appellant's exception made at the conclusion of the court's instruction was that "there is no evidence of the police team working in that literal sense."

Appellant now expands on the reason for his exception by maintaining that the legality of the "police team" concept of probable cause depends upon a satisfactory evidentiary showing of the details of the informer's statement, and that such details were not in evidence in this case. In effect then, appellant does not contend that the court misstated the law in its instructions, but rather that the challenged instruction had no application to the evidence adduced at the trial.

Maryland Rule 756 f provides that a party having an objection to any portion of any instruction given, or to any omission therefrom, shall before the jury retires to consider its verdict, make such objection "stating distinctly the portion, or omission, or failure to instruct to which he objects and the ground of his objection." We think it apparent that the ground of appellant's objection made at the conclusion of the court's instructions was not sufficiently distinctive to warrant review on appeal. We nevertheless note that the challenged instruction was given in the context of "what information" the arresting officers had "the moment they entered the room"; that the court defined probable cause as existing "where the facts and circumstances within the police officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense had been or is being committed"; and that the court qualified its instruction by telling the jury that "Common rumor, reports, suspicions, even though strong, are not sufficient to support an arrest and a search and seizure." Considering the

challenged instruction in this light, we think that even if over-broad, no real prejudice resulted to appellant, and accordingly we find no reversible error.

## V

### *Sufficiency of the Evidence to Go to the Jury*

Appellant contends that the trial court erred in denying his motion for judgment of acquittal at the conclusion of the case. We disagree. In order to overturn a judgment entered on the verdict of a jury for insufficiency of the evidence, it is necessary that there was no legally sufficient evidence, or inferences drawable therefrom, on which the jury could find an accused guilty beyond a reasonable doubt. *Quinn v. State,* 1 Md. App. 373. The record before us discloses no such deficiency of evidence.

*Judgment affirmed.*