Christopher Michael **HOUSER** and **Forrest Susan Grubb, Plaintiffs-Appellees,**

v.

James **GEARY,** Sheriff of County of Santa Clara, etc., et al., Defendants-Appellants.

No. 71–2668.

United States Court of Appeals, Ninth Circuit.

Aug. 21, 1972.

Michael Buzzell, Deputy Atty. Gen. (argued), John T. Murphy, Deputy Atty. Gen., Evelle J. Younger, Atty. Gen., San Francisco, Cal., for defendants-appellants.

Paul K. Robertson (argued), of Robertson & Hand, Palo Alto, Cal., for plaintiffs-appellees.

Before DUNIWAY and CARTER, Circuit Judges, and MURRAY,* District Judge.

DUNIWAY, Circuit Judge:

Habeas corpus. The District Court issued the writ and respondent custodian appeals. We reverse.

Houser was charged in the California Superior Court with possession of and planting and cultivating marijuana (Cal.Health & Safety Code §§ 11530, 11530.1). He originally pled not guilty and moved to set aside the information and to suppress the evidence found in and on the premises where he resided. (Cal.Pen.C. §§ 995 and 1538.5). The motions were denied. Houser then pled guilty to the first count (§ 11530) of the information. The second count was dismissed. Houser's appeal, permitted by Cal.Pen.C. § 1538.5(m), raised solely the issue that the motion to suppress should have been granted. The California Court of Appeal affirmed in an unpublished opinion.

Houser's petition for a writ of habeas corpus also raises but one issue, the sufficiency of the search warrant that underlay the search. We quote the affidavit supporting the warrant and pertinent parts of the warrant in the margin.[1]

---

* Honorable William D. Murray, United States District Judge, District of Montana, sitting by designation.

1. "On September 3, 1969, your affiant personally contacted DAVID KAY, a businessman in Palo Alto, who related that his mother owns the property, including the lot and all buildings, known as and located at 833 La Pera, Barron Park, California. He described buildings on said property as follows: a) a two-

Pursuant to the warrant, all four structures were searched. Marijuana was found in the house, where Houser and a friend were living, in the room over the garage, where one Hook was living, and in the hothouse. Houser was away during the search, but arrived when it was over. He was arrested and marijuana was also found on his person.

In its opinion and order granting the writ, the District Court said:

"Here the officers knew that the living units were occupied as separate residences.[2] They did not know, nor did they have any reason to believe, that the hothouse was associated with any particular unit, that petitioner had planted or was harvesting the marijuana in the hothouse, or that anyone living in petitioner's unit was in any way associated with the hothouse. In short, there was no reasonable cause to believe that petitioner or anyone else in petitioner's building or anyone in any particular building on the premises had any association with the building in which the marijuana was being grown."

If this case involved the usual multiple dwelling, such as an apartment house or a block of flats, we might agree. *See* United States v. Hinton, 7 Cir., 1955, 219 F.2d 324; United States v. Higgins, 7 Cir., 1970, 428 F.2d 232, on which the District Court relied. This, however, is not such a case.

Here we have a two story single family residence on a city lot. The other buildings—the garage with a bedroom over it, the shed converted to a bedroom,

story, single family dwelling; b) a detached garage to the rear of said dwelling with a room above the garage converted for occupancy; c) a small shed converted to sleeping quarters located in the rear yard; and d) a hot house/green house attached to the shed listed as item 'c'.

"He further related that during his mother's extended absence from the country, he has occasionally checked on the property to protect her interest; that said property is now rented to and has been rented for approximately 5 months to a CHRISTOPHER HOUSER; that within the past week he made an examination of the premises and observed that what had been a green house attached to a small converted shed, had been converted to a hot house by removing the lath floor and covering the green house with an opaque plastic material; that on entering the hot house he observed numerous large green plants which appeared to be recently watered; that he removed one of the plant leaves and delivered it to Sheriff's Office personnel.

"Your affiant has personally examined the above described leaf and from his experience as a narcotics officer knows it to be marijuana.

"On September 4, 1969, your affiant personally observed the property at 833 La Pera, Barron Park, California, and could see through an opening in the plastic covering the hot house growing marijuana plants.

"The aforementioned DAVID KAY and several neighbors related to your affiant

that in recent weeks they had seen a person appearing to enter and leave the living quarters over the above described garage and numerous persons entering and leaving the small shed to which the greenhouse/hot house is attached.

.    .    .    .    .

"Your affiant has personally examined Sheriff's Office records which indicate that CHRISTOPHER HOUSER was arrested in Palo Alto, California, on July 6, 1968, for a violation of Section 11555 of the California Health & Safety Code (Possession of Narcotics Paraphernalia)."

The search warrant provides: "You are therefore commanded, in the daytime, to make immediate search of the a) two-story, single family dwelling; b) a detached garage to the rear of said dwelling with a room above the garage converted for occupancy; c) a small shed converted to sleeping quarters located in the rear yard; and d) a hot house/green house attached to the shed listed as item 'c'."

2. If the court means that they had been separately rented by the owner to their occupants, it is mistaken. The only evidence is that the owner rented "the premises" to Houser. We therefore assume that the court meant, as the affidavit states, in substance, that someone was using the room over the garage, and that numerous persons were seen going in and out of the shed attached to the hothouse.

and the hothouse, were all, in a non-technical sense, appurtenances of the main dwelling, or so a police officer could reasonably believe. The "property" was rented to Houser. The officer could take this to mean the entire premises. From this he could infer that Houser was in control of the whole, and was living in the house. He could also infer that the person occupying the room over the garage and the numerous persons seen entering and leaving the shed attached to the hothouse were there with Houser's knowledge and permission. He was not required to assume that Houser did not know that the marijuana was growing in the hothouse, or that he had surrendered possession of the hothouse to others. In short, we think that the officer had reasonable cause to infer a connection between the marijuana which he knew was in the hothouse and the renter of the premises, who, he could infer, was occupying the house rather than one of the bedrooms in the out-buildings. These inferences might be wrong in fact, but they are, in our judgment, more reasonable than not, and that is enough for probable cause.

Thus there was at least probable cause shown in the affidavit to search the hothouse and the main house, each of which was separately described in the warrant. Those searches produced the evidence that Houser sought to suppress.

It is true that marijuana was also found in the bedroom over the garage, but we regard that fact as immaterial. If Houser had gone to trial and that marijuana had been offered in evidence against him, he might well have had it excluded. His guilty plea foreclosed that possibility. But he was not entitled to suppress the marijuana found in the hothouse or in the house where he lived.

In our opinion, the facts in this case are closer to those in People v. Nelson, 1959, 1st Dist., 171 Cal.App.2d 356, 340 P.2d 718, upon which the California Court of Appeal relied, and in United States v. Santore, 2 Cir., 1959, 290 F.2d 51, and Fry v. United States, 9 Cir., 1925, 9 F.2d 38, than to those in the cases on which the District Court relied.

The order is reversed with directions to dismiss the petition.