## NATHANIEL BUTLER *v.* STATE OF MARYLAND

[No. 249, September Term, 1973.]

*Decided January 4, 1974.*

The cause was argued before MOYLAN, MENCHINE and DAVIDSON, JJ.

*Stephen L. Snyder* for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Bernard Kole, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

In a jury trial in the Criminal Court of Baltimore, Nathaniel Butler was convicted of unlawful possession of heroin in sufficient quantity reasonably to indicate an intent to distribute the same. (Art. 27, § 286 (a)(1)) Appellant thereafter was found guilty by the court (after waiver of a jury trial) under an addendum to the indictment as to which he had been found guilty by the jury. He was sentenced to a

term of twenty years imprisonment and to pay a fine of $25,000.00.

His appeal contends:

1. That the search warrant and admission in evidence of the contraband seized under it, violated his constitutional rights.

2. That the trial court's refusal to grant an accomplice instruction was erroneous.

3. That the evidence did not establish his possession of narcotics.

4. That the trial court's denial of his motion for a new trial upon grounds of newly discovered evidence was erroneous.

5. That the trial court improperly permitted police officers to testify as expert witnesses.

## 1. The Search and Seizure

Appellant attacks the affidavit upon which the warrant was issued and the form of the warrant itself.

### The Affidavit

We regard the contention that the affidavit did not establish probable cause for the issuance of a warrant as frivolous. We will say no more than that the affidavit, a combination of hearsay information from a reliable informant, buttressed by the direct observations of the affiant, presented the issuing judge with facts and circumstances clearly sufficient to show probable cause to believe that heroin was being concealed within 612 Pitcher Street. Moore v. State, 13 Md. App. 711, 284 A. 2d 614.

### The Form of the Warrant

Appellant maintains that the warrant is invalid as a general warrant. It authorized a search of "612 Pitcher Street, 3 story brick dwelling." The record shows that upon execution of the warrant it developed that the premises 612 Pitcher Street had a first floor tenant (Vaughn); a third floor

tenant (Rudy); with the second floor rear bedroom rented to the appellant. The police were directed to appellant's room immediately upon entry, and it was that room only that was searched and from which contraband was seized.

In *Tucker v. State,* 244 Md. 488, 224 A. 2d 111, wherein the warrant authorized search of a similarly described property, the contention that it was a general warrant was rejected. There, the warrant authorized search of the entire premises but the affidavit for that warrant demonstrated probable cause as to one room only and the search was limited to that room. Appellant suggests that *Tucker* is distinguishable, because the subject property "had three residential units contained within it that were separate and apart from each other," yet the affidavit contained no restricting language. No precise formula for constitutional particularity exists, as was pointed out in *Tucker* at page 496 [115]:

> "We have said many times that there is no formula which can be used to measure the particularity with which premises must be described and that the adequacy of the description in every case will depend on the facts and circumstances there present."

Appellant cites a number of federal decisions that he argues require us to reject the subject warrant and to suppress the evidence seized thereunder. We reject his contention because we find that the facts and circumstances of the subject case bring it within the legal theory announced in another line of federal decisions presciently indicated by antecedent Maryland cases.

A more detailed description of the premises described in the warrant as "612 Pitcher Street, a three-story brick dwelling" is desirable for clear understanding of the distinction made in the appellate decisions cited herein. 612 Pitcher Street is a row house dwelling in Baltimore City with no outward sign that it contains separate apartments. There was no showing that the affiant to the warrant had any knowledge, actual or constructive, that the dwelling was other than a single family dwelling. Neither he nor other

police officials were shown to possess any information such as would reasonably indicate that the property was a multiple unit building. Indeed, somewhat ironically, a written statement of a witness, offered by the defendant as Exhibit 1, in the handwriting of his counsel, refers to the property as "612 Pitcher Street a single family row house * * *."

*U. S. v. Hinton*, 219 F. 2d 324, serves as the principal basis for appellant's contention. He also cites *U. S. v. Barkouskas*, 38 F. 2d 837; *U. S. v. Lee*, 448 F. 2d 604; *Moore v. U. S.*, 461 F. 2d 1236; *Houser v. Geary*, 465 F. 2d 193; *U. S. v. Diange*, 32 F. Supp. 994, and *U. S. v. Esters*, 336 F. Supp. 214, as supporting his view. We find some of the cases cited by appellant are clearly distinguishable on their facts and some, indeed, to support this warrant's validity.

In *Hinton, supra*, the Court's opinion recites at page 325:

> "The address named in the warrant is an entire *apartment building*, the basement and each of *the three upper floors of which constitute separate residences.*" [Italics supplied]

In *Barkouskas* the opinion recites at page 837:

> "* * * the owner of the building occupied with his family the second floor, and the defendant held under lease and occupied the first floor, in which place he ran a store. Under these facts, there were two places included in the description and the description was a general and not a 'particular' description."

In *Lee* the warrant authorizing search of "718-720 North Third Avenue" was upheld.

*Moore, supra*, is so factually inapposite that it furnishes no reasonable support for appellant's contention.

*Houser, supra*, furnishes strong support for the validity of the subject warrant, as will be demonstrated hereafter.

In *U. S. v. Esters, supra*, the opinion shows that there were two separate and easily visible doorbell buttons; two mail boxes on the right side of the door about one foot below the

single house number, one of which included an opening for a speaking tube that the Court described [P. 216] as "a device commonly used in multiple-occupancy dwellings;" two telephones served the address, listed to different individuals; and two electric utility meters were attached to the side of the building. Thus it is plain that prior to the application for the warrant in *Esters*, the affiant or other government agents knew or should have known that the premises was a multi-unit building.

*Diange*, *supra*, lends first blush support to appellant's contention. However, the Court's description of the premises is ambiguous as to its actual appearance. It is of some significance, however, that the case has been cited with approval in only four cases, namely: *Hinton*, *supra*; *Esters*, *supra* (both previously distinguished herein); *State v. Costakas*, 226 A. 2d 695 [Rhode Island], and *U. S. v. Brown*, 151 F. Supp. 441. In *Costakas* [P. 697] the Court stated that the "old mansion * * * had as of the night of the search been long since converted into an apartment building." In *Brown* [P. 444] the Court stated that the "building had at least the appearance of a rooming house."

We find the subject case to be controlled by those cases involving premises the multi-unit character of which was neither known nor apparent at the time of issuance of the warrant. The leading case is *U. S. v. Orlando (Santore)*, 290 F. 2d 51; *cert. denied* 365 U. S. 834. In that case the Court of Appeals for the Second Circuit said at page 66:

"The warrant stated that the applicant for the warrant had reason to believe that illegal narcotics were to be found 'on the premises known as 164 Hill Street, Elmont, Long Island, New York, being a one family house, in the Eastern District of New York.' However, it is defendant's contention that since the house was not a one-family house, but two-family, the basement and second floor being occupied by Orlando and his wife and the first floor by a family named Drago, the warrant did not describe the place to be searched with that particularity required by the Fourth Amendment. While there

might be merit to this position were we dealing with the case of an ordinary multiple dwelling building, see United States v. Hinton, 7 Cir., 1955, 219 F.2d 324 we think that under the circumstances here the district court's ruling must be upheld.

The house at 164 Hill Street is to all outward appearances a one-family house with a front door and a side door, and it had always been registered with the local authorities as a one-family dwelling. A few years prior to the search the interior of the house was renovated and subdivided by Orlando, but, in contravention of local ordinances, no permission to do so was obtained from the proper authorities. Consequently no notice of this subdivision was ever given to the local officials.

In view of these facts we think that the issued warrant described the premises to be searched with that 'practical accuracy' we have held to be necessary. United States v. Fitzmaurice, 2 Cir., 1930, 45 F.2d 133. The description in the warrant was in accordance with the outward appearance of the structure, cf. Carney v. United States, 6 Cir., 1935, 79 F.2d 821, and in view of the concealment by Orlando of the interior alteration made by him it would be absurd to say that the Government was on notice as to it. The agents were not warned of a possible dual occupancy of the house until after they had shown the copy of the warrant to Orlando and had entered inside. At that moment it was too late for them, consistent with the success of their mission, to have retreated and obtained a new warrant."

*Houser, supra,* although cited by appellant, as previously indicated, supports the validity of the subject warrant, saying at page 195:

"If this case involved the usual multiple dwelling, such as an apartment house or a block of flats, we might agree. See United States v. Hinton, 7 Cir., 1955, 219 F.2d 324; United States v. Higgins, 7 Cir.,

1970, 428 F. 2d 232, on which the District Court relied. This, however, is not such a case.

Here we have a two story single family residence on a city lot. The other buildings — the garage with a bedroom over it, the shed converted to a bedroom, and the hothouse, were all, in a non-technical sense, appurtenances of the main dwelling, or so a police officer could reasonably believe. The 'property' was rented to Houser. The officer could take this to mean the entire premises. From this he could infer that Houser was in control of the whole, and was living in the house. He could also infer that the person occupying the room over the garage and the numerous persons seen entering and leaving the shed attached to the hothouse were there with Houser's knowledge and permission. He was not required to assume that Houser did not know that the marijuana was growing in the hothouse, or that he had surrendered possession of the hothouse to others. In short, we think that the officer had reasonable cause to infer a connection between the marijuana which he knew was in the hothouse and the renter of the premises, who, he could infer, was occupying the house rather than one of the bedrooms in the out-buildings. These inferences might be wrong in fact, but they are, in our judgment, more reasonable than not, and that is enough for probable cause."

The subject case is factually almost identical with *Owens v. Scafati*, 273 F. Supp. 428, wherein the warrant described the property to be searched as "1 Thomas Park." There, the Court said at page 429:

"With regard to the contention that the search warrant failed to describe the premises with particularity, * * * there was no showing at any stage of the State court proceedings, and there has been no showing to date, that 1 Thomas Park appeared to be a multiple unit dwelling. The State court record indicates, to the contrary, that there

was only one door from the outside, which opened into a hallway which gave access to the entire house. There has been no showing that the police officers knew or should have known from its physical appearance that 1 Thomas Park was a multiple dwelling house when they applied for the warrants * * *."

It is of added significance that the Court in *U. S. v. Esters, supra,* clearly recognized the noted distinction by quoting from the decision in *Owens, supra* [P. 220]: "There has been no showing that the police officers knew or should have known from its physical appearance that 1 Thomas Park was a multiple dwelling house when they applied for the warrants."

*Bland v. State,* 197 Md. 546, 80 A. 2d 43, factually somewhat different from the subject case, has sufficient similarity to give the words used in the opinion persuasive impact here. At page 553 [46] it was said: "The outward appearance of the house reasonably supported the belief that it was being used for gambling. It was a small house and the two apartments were closely connected. The police officers had no way to know with certainty whether the violations of the law were being committed in one apartment or both." The warrant was upheld.

In *Allen v. State,* 178 Md. 269, 13 A. 2d 352, wherein the warrant authorized the search of "Nos. 1308 and 1310 East Monument Street," although the premises had no common entrance, the warrant was upheld, the Court of Appeals saying at page 277 [356]: "The situation [the issue whether the warrant was a general warrant] must be determined as it was observed at the time of the application * * * " after earlier comment at page 276 [356]: "It does not appear that the officers knew or had reason to believe that the two buildings were physically separate and that the upper stories were occupied by different tenants. The warrant was for the premises to be searched, and not the person. There is nothing in the record to indicate that the officers had any cause to believe that certain rooms of the premises, rather than both buildings, were being used for unlawful

gambling." See also: *Frey v. State,* 3 Md. App. 38, 46, 237 A. 2d 774, 780; *Reidy v. State,* 8 Md. App. 169.

### 2. *Refusal of Accomplice Instruction*

In *Burley v. State,* 5 Md. App. 469, 248 A. 2d 404, this Court said at page 472 [406]:

> "An accomplice is one who knowingly, voluntarily, and with common criminal intent with the principal offender, unites with him in the commission of a crime either as a principal or as an accessory before the fact."

There was not a scintilla of evidence from the State or the defense to show that such a relationship existed between the witness Vaughn and the accused. Vaughn testified that he was a landlord who had rented a room to the appellant. There was no testimony from any source that any other relationship or association between them ever existed. It was proper for the trial court to decline to give an accomplice instruction to the jury with respect to Vaughn. Under the uncontradicted evidence he was not an accomplice. *Watson v. State,* 208 Md. 210, 117 A. 2d 549. The mere fact that he had been indicted for the offense does not make him an accomplice. *Burley, supra,* p. 475 n. 6 [408].

### 3. *Possession of Narcotics*

The testimony showed that the rear bedroom on the second floor of 612 Pitcher Street had been rented to the appellant about 1½ weeks before the search. At the time of the rental there was no lock upon the bedroom door. A lock was installed thereafter and on the day of the search the door was locked and had to be forced open to gain entry to the room. The appellant was not upon the premises during the search. All other adult occupants of the house were present at the time of search and none had a key to the locked room. This gives rise to a permissible inference that the lock was installed by the appellant and that he was the sole proprietor of the room.

The search revealed 334 bags of heroin under a mattress in the locked room.

The room was described by one police witness as follows:

"This particular room contained no clothing, no furnishings other than the bare essentials in a room. Finding the drugs in a room like this, locked up, would indicate to me —

\* \* \*

It would indicate to me that this room was used specifically to hide drugs for the seller of these drugs to come to the room on occasions only to pick up the drugs and to leave again. Not to live in."

A second police witness said:

"I have had several cases of this nature where one room is rented for the sole purpose of stashing drugs in large quantities for sale, distribution known as a stash house. Where someone doesn't want to carry the drugs on their person for fear of being arrested on the street, they have a place called a stash house. They don't live there, have no clothes there, don't sleep there, just keep their drugs there which in my experience I would say with nothing else in this room but a bed, which was really totally falling apart, nothing in the closet, nothing in there but this bed and the bag containing the heroin under the mattress, I would say this was a stash house."

Numerous cases [1] have announced that a showing of constructive possession of narcotics is sufficient to establish a violation of the proscribing statute. From the totality of the circumstances shown in the subject case, the jury found the appellant guilty. The evidence was sufficient to support the conviction, since it showed directly or by rational inference, facts from which the trier of facts could be fairly

---

1. *Henson v. State*, 236 Md. 518, 204 A. 2d 516.
   *Broadway v. State*, 3 Md. App. 164, 237 A. 2d 820.
   *Munger v. State*, 7 Md. App. 710, 256 A. 2d 888.
   *Folk v. State*, 11 Md. App. 508, 275 A. 2d 184.
   *Graybeal v. State*, 13 Md. App. 557, 284 A. 2d 37.
   *Nutt v. State*, 16 Md. App. 695, 299 A. 2d 468.

convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged. *Carter v. State,* 15 Md. App. 242, 247, 289 A. 2d 837, 840.

### 4. *Motion for New Trial*

The brief of appellant suggests error in the denial of a motion for new trial, allegedly based upon "newly discovered evidence." The record shows that the evidence of the witness offered at the hearing on the motion, simply does not qualify as "newly discovered." The witness had been interviewed by appellant's counsel before trial and her absence from the original trial had been noted but ignored. The grant or denial of a new trial lies within the sound discretion of the trial court, and its action will not be disturbed on appeal except under the most extraordinary and compelling reasons. *Jones v. State,* 16 Md. App. 472, 477, 298 A. 2d 483, 486. No extraordinary or compelling reasons are shown in this record.

### 5. *Police Expert Testimony*

Police Officers Balzano and Schline were permitted over objection to testify as experts on the basis of their knowledge and experience in narcotics investigations.

Officer Schline testified that he had "had several cases of this nature where one room is rented for the sole purpose of stashing drugs in large quantities for sale, distribution known as a stash house. When someone doesn't want to carry the drugs on their person for fear of being arrested on the street they have a place called a stash house." Officer Balzano gave testimony of similar import.

It is well established that police officers possessed of special knowledge gained from a background of experience will, in the discretion of the trial court, be permitted to express an expert opinion in the area of that special knowledge. *Sherrod v. State,* 1 Md. App. 433, 230 A. 2d 679; *Mullaney v. State,* 5 Md. App. 248, 246 A. 2d 291; *Brooks v. State,* 13 Md. App. 151, 158, 282 A. 2d 516, 521. We find no abuse of discretion here.

*Judgment affirmed.*
*Costs to be paid by appellant.*