Submitted on briefs February 18, affirmed April 1,
petition for review denied May 25, 1971

STATE OF OREGON, *Respondent, v.*
GREGORY KENT HARTMAN, *Appellant.*

483 P2d 107

Terry K. Haenny, Salem, for appellant.

Frank D. Knight, District Attorney, and James McElwain Brown, Deputy District Attorney, Corvallis, for respondent.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FORT, J.

Defendant was convicted of unlawful possession of narcotics. He appeals, assigning as sole error the denial of his motion to suppress certain evidence seized in his dormitory room pursuant to a search warrant.

On April 6, 1970, Sergeant Montgomery of the Corvallis city police department was informed by an anonymous phone call that one Cal Leo had in his possession at a stated address in residential Corvallis the drug marihuana. A search warrant was obtained and marihuana was discovered, although at the time of the search Leo was not present. Based on that evidence, however, an arrest warrant for Leo was obtained.

A person at the searched premises gave to the police officers the description of a panel truck in which Cal Leo had driven away, which was subsequently discovered in a different part of the city near Weatherford Hall, an Oregon State University dormitory. An investigation of the panel's registration revealed that its ownership was registered to a university student living in room 124, Weatherford Hall. Upon entering that corridor of Weatherford Hall the three officers

looking for Mr. Leo recognized the odor of burning marihuana. One of the officers knocked on the door to room 124, which was opened by one of the occupants. The police officer identified himself and asked if Cal Leo was there. The officers simultaneously detected coming from the room a much stronger odor of burning marihuana and, through the open doorway, noticed a smoky haze inside the room.

There were four persons visible in the room, but no one identified himself as Cal Leo. The officers entered the room without objection. Marihuana seeds and a hashish pipe were in plain view on a table. After they had checked the identification of two of the occupants, Leo, who was one of the four men, identified himself. He was arrested and searched. Marihuana was found in a jacket pocket on the chair where he had been sitting, but no marihuana was found on his person. Another occupant of the room was searched and on his person was found a package of marihuana. A search of the defendant and the fourth occupant revealed no contraband. The defendant was arrested for frequenting a place where narcotics are illegally kept. Shortly thereafter the police learned room 124 was the defendant's. The officers did not conduct an exploratory search of the room. They searched only the person of each occupant and seized the marihuana pipe and marihuana seeds. The officers took the occupants with them, locked the door and returned about 12 hours later with a search warrant for the defendant's room. A search revealed 14 cubes of marihuana underneath a mattress. These were admitted into evidence at his trial. The motion to suppress sought the exclusion of all evidence seized both at the time of arrest of the defendant and pursuant to the search warrant for defendant's room.

This court in *State v. Leo*, 4 Or App 543, 480 P2d 456 (1971), held that the search warrant issued to search the premises there involved was constitutionally deficient under the standards of *Aguilar v. Texas*, 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964), and *Spinelli v. United States*, 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969), and suppressed the evidence so obtained. The premises searched and the affidavit there involved were entirely different from those in the case at bar.

Defendant contends that the search warrant directed against his room was constitutionally defective, not because the affidavit upon which it was based was lacking in probable cause, but for the reason that the information alleged in the supporting affidavit was obtained from an illegal arrest and incidental search. Defendant further argues that but for the officers' earlier illegal search of the premises in *State v. Leo*, supra, and his subsequent arrest as a result of that search, the defendant would not have been arrested and the search warrant for his premises would not have issued. In short, he claims the illegality of the search in *State v. Leo*, supra, so taints his own arrest and the issuance of the warrant for the search of his premises as to render the evidence obtained inadmissible under "the fruit of the poisonous tree" doctrine.

The issue presented for decision is whether the officers had probable cause to enter the defendant's dormitory room and arrest him for a crime being committed in the officers' presence independent of any evidence obtained as a result of the illegal search condemned in *State v. Leo*, supra, and his subsequent arrest in the defendant's room.

Since the arrest of the defendant was effected without a warrant, it could be legal under Oregon law

for a crime committed in the presence of the arresting officer, or, if for a felony, when the arresting officer has probable cause for believing the arrested person to be guilty. Since two of the occupants, including the defendant, were arrested for frequenting a place where narcotics are illegally kept, a misdemeanor, ORS 474.130.(3), ORS 474.990 (3), that crime must have been committed in the presence of the arresting officer.

■ One significant observation made by the officers and set forth in the affidavit was their detection of burning marihuana in the defendant's room.[1] As soon as the door was opened in response to the officers' knock, the strong odor recognized by the affiant as burning marihuana justified the officers' belief that a crime was being committed. An obvious conclusion

---

[1] See, United States v. Ventresca, 380 US 102, 85 S Ct 741, 13 L Ed 2d 684 (1965), where the court said:

"* * * A qualified officer's detection of the smell of mash has often been held a very strong factor in determining that probable cause exists so as to allow issuance of a warrant. * * *" 380 US at 111.

See also, People v. Peterson, 9 Cal App 3d 627, 633, 88 Cal Rptr 597 (1970), where the court said:

"While in the present case the officers did not have probable cause to make an arrest when they knocked, as soon as the door was opened in response to their knock and they smelled the marijuana, they had probable cause to arrest the occupants for being in a place where marijuana was being smoked. * * *"

See also, People v. Rice, 10 Cal App 3d 730, 740, 89 Cal Rptr 200 (1970), where the court said:

"Smell is a factor in determining the reasonableness of an arrest and incidental search."

See also, People v. Nichols, 1 Cal App 3d 173, 81 Cal Rptr 481 (1969); People v. Goldberg, 2 Cal App 3d 30, 82 Cal Rptr 314 (1969). See, Vaillancourt v. Superior Court for County of Placer, 273 Cal App 2d 791, 78 Cal Rptr 615 (1969), where the court held that the smell of burning marihuana permeating a hotel corridor gave police officers probable cause to arrest. And see, Mullaney v. State, 5 Md App 248, 246 A2d 291 (1968).

from the strong odor of burning marihuana and the smoky haze, not to mention the "hashish pipe" and "marihuana residue" in plain view, was that the drug was being possessed and consumed by individuals in that room at that moment. The four occupants by their presence in the room indirectly identified themselves as probable violators.

The required probable cause thus was acquired independently of any evidence or information obtained from the earlier invalid search in *State v. Leo*, supra. It clearly arose from an independent origin. In *Wong Sun v. United States*, 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963), the court said:

> "* * * We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959). * * *" 371 US at 487-88.

We hold the officers had probable cause to arrest the defendant untainted by the illegal search condemned in *State v. Leo*, supra, and was obtained "by means sufficiently distinguishable to be purged of the primary taint." None of the evidence found in the *Leo* search was involved here. At most, that search was only an independent contributing factor to defendant's arrest. Furthermore, this defendant was arrested and his room subsequently searched for a wholly independent crime from that involved in *State v. Leo*, supra.

The reason for the exclusionary rule is to deter

illegal police action. There would be no rational purpose served to extend the exclusionary rule to a situation where, because of an illegal search, police officers in looking for a focal suspect identified as a result of an illegal search are precluded from arresting other persons in physical privity with him for currently committing other independent crimes. *Wong Sun v. United States*, supra. Such a distinction would allow an aura of protection to follow a prime suspect and immunize independent criminal actors engaged in offenses having no nexus with the crime previously committed by the focal suspect.

■ The United States Supreme Court has held in *Jones v. United States*, 362 US 257, 80 S Ct 725, 4 L Ed 2d 697, 78 ALR2d 233 (1960), that a party must have standing in order to claim a constitutional protection. One must be either a person against whom the search was directed or a person legitimately on the premises searched and against whom the fruits of the search were intended to be used or a person charged with illegal possession of the property seized. The Supreme Court said:

"* * * [O]ne must have been a victim of a search and seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure at someone else. * * *" 362 US at 261.

The defendant claimed no proprietary interest in the premises involved in the search condemned in *State v. Leo*, supra, nor does the defendant claim any possessory interest in the contraband seized there. No evidence was introduced against the defendant here that was taken either from premises unlawfully searched in *State v. Leo*, supra, or Leo's person when

he was arrested at the defendant's premises. Thus we conclude that Hartman lacks standing in this case to challenge evidence seized in *State v. Leo,* supra.

The judgment is affirmed.