RONNEY RAYMOND OLIVER *v.* STATE
OF MARYLAND

[No. 235, September Term, 1969.]

*Decided February 3, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Samuel Gordon* for appellant.

*T. Joseph Touhey, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *James E. Kenkel, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Ronney Raymond Oliver (appellant) was found guilty by a jury in the Circuit Court for Prince George's County of robbery with a deadly weapon. He presents questions with regard to (1) the proof of the allegations charged; (2) the admissibility of a judicial identification; and (3) the denial of a motion for a new trial.

(1)

Appellant was convicted under the first count of the indictment against him, charging that he "* * * feloniously with a dangerous and deadly weapon did rob Robert C. Edwards and violently did steal from him two hundred dollars * * *." This is the formula stated to be sufficient by Code, Art. 27, § 489. He claims that the State failed to prove the allegations charged in that it did not show that Edwards had "the care, custody, control, management or possession of the property taken." There was no allegation in the count as to the ownership of the money stolen. This was not improper. It has been consistently held that it is not necessary to allege ownership of money stolen in a robbery. *Kyle v. State*, 6 Md. App. 159, 162. As there was no allegation of ownership, there could be no variance between the *allegata* and the *probata* in this respect. Thus the question is one of the sufficiency of the evidence. It is established that proof of ownership of property stolen in a robbery is not required. *Tyler v. State*, 5 Md. App. 158, 162. And see *Frazier v. State*, 5 Md. App. 88, 94; *McMillan v. State*, 3 Md. App. 699, 701; *Harrison v. State*, 3 Md. App. 148, 152. A charge of robbery may be sustained by proof that the property was forcibly taken from the care, custody, control, management or possession of one having a right superior to that of the robber. *Hartley v. State*, 4 Md. App. 450, 465. There was evidence adduced that Edwards was employed as a clerk by Bell-Mar Incorporated, trading as Bell's Liquors. The store was held up by three robbers, each of whom had a gun. Edwards was ordered by appellant to open the cash drawer and hand over the money therein and he did so. This was sufficient for the jury to find that Edwards had such care, custody or control of the money stolen as was superior to that of the robbers and that it was stolen from him as alleged. No more was necessary. It does not follow that because the secretary-treasurer of Bell-Mar Incorporated was also present at the time of the robbery and was forced at gunpoint to open a safe from which the robbers also stole

money of the corporation, the evidence was not sufficient to establish that Edwards had the required care of the money stolen from the cash register. It was, at the least, a rational inference from the evidence that he did and we cannot say that the trial court erred in submitting the case to the jury. See *Williams v. State,* 5 Md. App. 450.

We note that the amount of money stolen is not an essential element of the offense of robbery, so long as the proof shows that something of value was taken, it being sufficient to prove the taking of a greater or lesser sum of money than that alleged in the indictment. *Ham, et al. v. State,* 7 Md. App. 474, 479.

(2)

At the trial, after the jury had been empaneled and sworn, defense counsel, out of the presence of the jury, told the court that he envisioned that the State would adduce evidence as to identification of appellant as one of the robbers, that the identifications were based upon photographs of appellant which had been illegally obtained and that "I intend to make a motion at that point to suppress not only the photographs, if the State intends to introduce them, but any testimony from any witnesses regarding the identification of this defendant as a result of this, what I call an unlawful arrest." Asked by the court for authority for his position, counsel said, "As the trial develops, I should have it," and the court said, "Well, anyway, we will watch it as it starts to unfold."

Edwards, during direct examination by the State, positively identified appellant as one of the robbers. Edward Rinehart, employed as a clerk in the liquor store and present at the time of the robbery, also positively identified appellant as one of the robbers during direct examination by the State. Both the identifications came into evidence without objection. On cross-examination of Edwards it was elicited that he first identified appellant from photographs shown him by the police. A detective had photographs in two "mug books, and I went through

them. I looked. I said, 'That's one right there.' Then he says, 'Look at another book.' Well, I looked at the other book. I said, 'That's the same guy there.' So he said, 'We'll pick him up.'" Edwards had been shown photographs on a prior occasion but made no identification at that time. On cross-examination of Rinehart it was elicited that he had viewed photographs on two occasions. On the first viewing no identification was made. On the second occasion he picked out a photograph of appellant as being that of one of the robbers. It appeared that appellant's photograph was not among those shown Edwards and Rinehart on the first viewing by each of them.

Testifying on the merits in his own behalf, appellant said he was driving his mother's car about two weeks after the robbery when he was stopped by the police. They checked his identification, registration and license and searched the car with his permission. One of the two companions with appellant had no identification and the police asked if he would drive the boy to the police station. Appellant agreed to do so. When they arrived at the station, the police took a photograph of appellant's companion. "I went around to another room and they took one picture of me * * *—he said that didn't come out too good. So altogether he took three pictures of me. He gave me two and told me to keep them for a souvenir." He was never told he was under arrest (appellant does not contend that he was under arrest). He told the police he did not want to be photographed but the police explained that "they take pictures of everyone who comes in there. They told me it was the normal routine for people that they * * * stopped on the road for anything; they just take their pictures" to put in the records. He was not then fingerprinted and was permitted to leave. Several weeks thereafter he was arrested.

Appellant called Detective E. G. Palmer of the Prince George's County Police, Robbery Squad. Palmer said he had investigated the robbery, and that he was at the police station when appellant came in about two weeks after the robbery. Appellant was not under arrest. Palmer

took photographs of appellant with a Polaroid camera. "I just asked Mr. Oliver if his companion and him—if we could take photographs of him." Palmer told him he had a right not to have his photograph taken and appellant said, "I have nothing to hide. Go ahead and take it." He willingly allowed Palmer to take his picture. Palmer took about four photographs and gave two to appellant. Prior to photographing appellant Palmer had shown photographs to Edwards and Rinehart but they made no identification. He again showed them a group of photographs, this time including appellant's photograph. There were about 70 photographs, all Polaroid, contained in a book. It was not the same book viewed by the victims on the first occasion. Each victim identified the photograph of appellant as that of the robber. Palmer admitted that he took appellant's photograph because he had received information that he was involved in the robbery, but did not have sufficient information to arrest him. Palmer was not one of the officers who accosted appellant and he had not been stopped or brought into the station at Palmer's direction. During his direct examination of Palmer, defense counsel requested the book containing appellant's photograph. Thereafter it was admitted in evidence without objection.

At the close of all the evidence, out of the presence of the jury, defense counsel moved for judgment of acquittal. He also said:

> "I go back to this situation of this testimony about this photograph. That is the only testimony—of course, this may be after the fact, this testimony concerning the photograph. I feel that all that testimony should be stricken for the reason that the officer had already testified that he had reason to believe or he had thought to believe that this defendant was one of the ones that had committed the robbery, but he took him to the police station and entered a mode of conduct designed to incriminate the defendant.

"Now, I feel that the defendant should have been arrested—if he was to be arrested, the arrest should have been made the first time he was taken there when the photographs were taken."

The court asked defense counsel if he had any authority for that position and counsel replied: "The only case I have is against me. But we want to keep the record, you know, in case anybody comes behind me." The motion was denied and we think it clear that the denial went to the motion for judgment of acquittal and any motion to strike the testimony.

On appeal appellant contends that the court erred "in allowing the case to go to the jury on the question of identification" and that he was denied due process of law by the admission of the in-court identifications. We have serious doubt that the judicial identifications were properly challenged so as to be before us on appeal. See *Richardson and Thomas v. State*, 7 Md. App. 334; *Thompson v. State*, 6 Md. App. 50. And it is clear that the evidence of extrajudicial identifications was not adduced by the State as independent evidence of identification but was placed before the jury by appellant. He could have elicited such evidence out of the presence of the jury on the question of its possible taint of the in-court identifications but did not do so. See *Bailey v. State*, 6 Md. App. 496. In any event we shall assume for purpose of decision that challenge of the judicial identifications was timely made.

We find no merit in the contentions raised. We have no difficulty in determining that the trial court could have properly found, on the totality of the circumstances surrounding the pretrial identifications by photograph as shown by the evidence, that they were not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. The witnesses made their identifications from a large number of photographs shown them and it did not appear that the procedure followed was in any way improper. We hold that

the pretrial procedure of identification by photograph was legal. See *Smith v. State*, 6 Md. App. 59. The only question is whether the inclusion of appellant's photograph among those viewed by the witnesses was improper by reason of the circumstances under which it was obtained. Appellant relies on *Davis v. Mississippi*, 89 S. Ct. 1394. But we need not here decide whether the holding of *Davis* that fingerprints obtained from an accused should be excluded as the product of a detention which was illegal under the Fourth and Fourteenth Amendments applies to the obtaining of photographs of the accused. For even if it does, there was credible evidence from which the trial court could find that appellant was neither under arrest nor investigatory detention and that his photograph was not the product of an illegal detention. It was not contradicted that appellant went to the police station voluntarily and while there it did not appear that he was at any time in custody or detained. Further we note that according to Palmer appellant consented to the taking of his photograph after being told that he had a right not to be photographed. In the circumstances we find no violation of the constitutional rights of appellant in the taking of his photograph and in the inclusion of it with other photographs shown the witnesses. As the pretrial identification procedure was legal it could not taint the judicial identifications and it was not error to admit them. Nor was there error in permitting the testimony as to the extrajudicial identifications to remain before the jury, even if considered as independent evidence of the identity of the accused as the criminal agent. *Smith v. State, supra.*

### (3)

Appellant claims error in the denial of his motion for a new trial with respect to the ground of newly discovered evidence. At the trial he produced two witnesses in an attempt to show an alibi. In support of the motion for a new trial he filed an affidavit from a Mary Dawkins containing facts which, if believed, tended to corroborate the alibi evidence. Mrs. Dawkins said she had discussed

what she knew about appellant's activities on the day of the crime with his mother but had not talked to his attorneys. She did not appear at the trial because "my husband would not let me go to Court on that day because it was the 14th of April, the day before the final time for filing income tax returns and he needed my help to find papers, etc. to file the returns on time." The affidavit was filed 27 May 1969 and the hearing in open court on the motion for a new trial was held on 2 June 1969.

The general rule is firmly established that the granting or refusal of a new trial lies within the sound discretion of the trial court and that no appeal will lie from its action thereon. There is an exception to the general rule where the trial court refuses even to consider newly discovered evidence. *Givner v. State,* 208 Md. 1; *Adams v. State,* 4 Md. App. 135.

It seems perfectly evident that the lower court considered the purport and possible effect of the facts contained in the affidavit; and the inference is strong, even in the absence of a transcript of the proceedings at the hearing, that the court found the new evidence insufficient to warrant the granting of a new trial. In this we find no basis to impute to the lower court any abuse of its discretion or any refusal to receive and consider evidence supplied by the affidavit. We hold there was no error in the denial of the motion for a new trial.

*Judgment affirmed.*