LLOYD MATTHEW JONES *v.* STATE OF
MARYLAND

[No. 119, September Term, 1972.]

*Decided January 3, 1973.*

The cause was argued before ORTH, C. J., and MORTON and GILBERT, JJ.

*Lawrence B. Goldstein* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Joseph D. Weiner, State's Attorney for St. Mary's County, Warren F. Sengstack, State's Attorney for Calvert County,* and *Naji P. Maloof, Assistant State's Attorney for Calvert County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Appellant was convicted by a jury sitting in the Circuit Court for Prince George's County of murder in the second degree and carrying a deadly weapon. Respective, concurrent sentences of 18 years and one year were imposed by Judge James H. Taylor who presided at the trial.

In this appeal it is contended that Judge Taylor abused the discretion imposed on him by refusing to grant appellant's motion for a mistrial during the course of the trial and by refusing to grant appellant's motion for a new trial on the ground of newly discovered evidence.

The record indicates that on Sunday, August 22, 1971, the appellant arrived at Kyler's store near Prince Frederick, Maryland, about three o'clock in the afternoon. Prior to his arrival at Kyler's, which would appear to be a "gathering spot" for members of the local community, the appellant had attended a "drinking party" with a number of friends. He remained at Kyler's until nearly midnight, at which time his brother arrived in a

white Pontiac ostensibly to take him home. At that time there were some 25 or 30 people congregated on the parking lot of Kyler's, including a group of approximately seven young boys. After appellant had entered his brother's car and while sitting in the front passenger seat, he fired a pistol out of the right front window and Michael Holland, 14 years old, who, apparently, was among the group of young boys standing approximately 25 feet from the car, was hit in the back of the head by a bullet and died several hours later.

In a statement given to the police shortly after the shooting, appellant admitted being drunk, admitted firing a .22 caliber pistol "two or three times up in the air" and admitted throwing the gun away on his way home after the shooting. Neither the gun nor the bullet was recovered. On the other hand, several witnesses for the State testified that appellant aimed the pistol in the direction of the crowd.

In answer to appellant's motion for discovery and inspection concerning chemical and ballistic tests, the State replied: "7. A .32 caliber bullett [sic] was removed from the roof of Kyler's Variety Store. No report as bullet is of different caliber and not related to this crime."

Although appellant had told the police the pistol he fired was .22 caliber, his brother testified at trial that it was .32 caliber; another witness stated that the shots sounded more like they were fired from a .38 caliber or .32 caliber pistol; and a third witness said that from the sound it could have been a .45 caliber, .38 caliber or .22 caliber. A State trooper testified that in the course of his inspection he found a .32 caliber bullet in the roof of Kyler's store; that he could not say whether or not the bullet was fired on the night of the crime; and when asked whether a .32 caliber bullet could have killed Michael Holland, he replied: "I suppose any bullet could, sir."

At this point appellant's counsel moved for a mistrial, asserting that "when the police officer who had conducted the State's investigation testified that any size caliber

of bullet could have been used to kill Michael Holland * * * this testimony differed from the previous information provided by the State, to the effect that a .32 caliber bullet which had been found was not associated with this crime because of its caliber, and that this previous information provided by the State was therefore false and misleading."

In this appeal appellant still contends that the information furnished by the State was "false and misleading"; that in reliance on this information "which indicated that the murder weapon was not a .32 caliber, the appellant fully intended to prove * * * that the appellant fired a .32 caliber gun at the time of the crime." He now contends that the officer's testimony that any caliber pistol could have killed the victim constituted "a surprise that should have served as a basis for a mistrial."

We think it perfectly apparent that the surprise here, if it can be termed that, was not of such dimension that it would compel the granting of a new trial. That the State was proceeding on the theory the murder weapon was a .22 caliber pistol was apparent to the appellant for it was based on information furnished by the appellant himself. Whether appellant could prove, or did prove, that he fired a .32 caliber pistol is at least open to question from a reading of this record. But in any event, it was not of great moment for neither side was able to show that the bullet recovered from the roof of the building had anything to do with the killing. Counsel for an accused has a right and a duty to pursue trial strategy and tactics in the fullest interest of his client. On the other hand, the trial of a criminal cause is not a matter for gamesmanship and we are not persuaded that the alleged surprise which appellant urges confronted him would warrant us in finding that the trial judge's refusal to use this as a vehicle for granting a mistrial constituted an abuse of the judge's discretion.

In support of his motion for a new trial, appellant filed an affidavit, executed by 18-year old John Vernon Chase, stating that he was present at the time Michael

476

Holland was shot and "heard a series of four or five shots and saw a person positively known to him as Ben Height firing some or all of the shots" and that Ben Height "was shooting in the direction of the boy who was shot." In the course of Chase's testimony at the hearing on the motion for a new trial, he said he had not volunteered this information either to the police or the appellant because "I didn't want to get involved in it." Although on direct examination he denied knowing that appellant was to be tried for murder, he recanted on cross examination and admitted knowing that appellant was to go on trial for murder because "I heard people talking about it" but, "like I said, I didn't know when it was." He conceded he was a neighbor of appellant, living approximately a mile away and that he had known him for about five years. Between the time of the shooting and the date of appellant's trial, a period of some three months, he had seen appellant "plenty of times" and talked with him "quite a few times", although, according to Chase, during that period they never mentioned appellant's forthcoming trial for murder and it was only after appellant's conviction and his release on bond pending imposition of sentence, that he and appellant discussed the case.

In denying the appellant's motion for a new trial, Judge Taylor stated: "It is hard to imagine that neighbors * * * who see each other as often as Mr. Chase saw Mr. Jones would not discuss something which was undoubtedly one of the most critical events to occur in Mr. Jones' life. * * * In a rural community in which Mr. Jones and Mr. Chase obviously visit and are entertained or seek their recreation in the very same places, Kyler's and Sachs, it is just incredible to think that throughout all of these meetings during the course of three to four months, Mr. Jones did not mention his trial for murder. * * * It seems that once the verdict was rendered by the jury in this case, then he becomes interested as a friend. * * * I would have to close my eyes to the logical inferences that are to be drawn from his testimony and

from what I heard at the trial of this case on the merits in order to grant this motion for new trial * * *."

It is, of course, well established that the granting or denial of a motion for a new trial lies within the sound discretion of the trial court and the action of the trial court upon such a motion will not be disturbed on appeal except under the most extraordinary and compelling reasons.[1] See *State v. Devers and Webster,* 260 Md. 360, 376; *Oliver v. State,* 8 Md. App. 610, 618. On the question of newly or after discovered evidence, it has been said:

> "There must ordinarily be present and concur five verities, to wit: (a) The evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal." *Johnson v. United States,* 32 F. 2d 127, 130. See also *Mills v. United States,* 281 F. 2d 736, 738.

It is essentially the function of the trial judge to evaluate and assess the newly discovered evidence and where such evidence consists of testimonial evidence from a witness allegedly discovered after the trial has been concluded, it is for the trial judge to determine the materiality and the credibility of such testimony. Unless it should appear that the trial judge's findings of fact were wholly unsupported by the record and, thus, clearly erroneous, his findings will not be disturbed on appeal. *McFarland v. State,* 147 Tex.Crim. 469, 472, 182 S.W.2d 494, 496 (Crim.App. 1944).

As stated by the late Mr. Justice Black, in speaking

---

1. Judge Digges, in speaking for the Court of Appeals in *Carlile v. Two Guys,* 264 Md. 475, 478, stated that "this Court, in its long history, has never found such circumstances to exist."

for the Court in *United States v. Johnson*, 327 U. S. 106, 111-112: "* * * it is not the province of this Court or the Circuit Court of Appeals to review orders granting or denying motions for a new trial when such review is sought on the alleged ground that the trial court made erroneous findings of fact. *Holmgren v. United States*, 217 U. S. 509, 54 L. Ed. 861, 30 S. Ct. 588, 19 Ann. Cas. 778; *Holt v. United States*, 218 U. S. 245, 54 L. Ed. 1021, 31 S. Ct. 2, 20 Ann. Cas. 1138; *Fairmount Glass Works v. Cub Fork Coal Co.*, 287 U. S. 474, 481, 77 L. Ed. 439, 443, 53 S. Ct. 252. While the appellate court might intervene when the findings of fact are wholly unsupported by evidence, cf. *United States v. Socony-Vacuum Oil Co.*, 310 U. S. 150, 247, 84 L. Ed. 1129, 1180, 60 S. Ct. 811; *Glasser v. United States*, 315 U. S. 60, 87, 86 L. Ed. 680, 708, 62 S. Ct. 457, it should never do so where it does not clearly appear that the findings are not supported by any evidence."

The motion for new trial on the basis of newly discovered evidence "is designed to serve the ends of justice. It is made available as a means of relief from manifest injustice. That purpose would hardly be served if the law required the trial judge, who heard all of the evidence and saw all of the witnesses, to assume that a jury would believe testimonial evidence however improbable and unworthy of belief he finds it to be. If the purpose of the remedy is to be served, without subjecting it to undue abuse, the trial judge who approaches the question of the probable effect of the new evidence upon the result, in the event of a new trial, should be vested with a broad discretion in considering matters of credibility as well as of materiality. Stringent or artificial limitations upon the exercise of the discretionary power of the trial judge to grant new trials could only subvert the purpose of the remedy." *Jones v. United States*, 279 F. 2d 433, 436 (4th Cir. 1960).

While it would appear in the case at bar that Judge Taylor based his determination to deny the motion for a new trial principally upon the ground that Chase was

available to the defense as a witness and, therefore, appellant had not been reasonably diligent in locating him, it is equally apparent that Judge Taylor simply found Chase's testimony to be unworthy of belief. As he put it, "I would have to close my eyes to the logical inferences that are to be drawn from his testimony and from what I heard at the trial of this case on the merits in order to grant this motion for a new trial * * *." It is entirely clear that the trial judge found Chase's testimony relating to the shooting of Michael Holland to be inherently untrustworthy and not worthy of submission to a jury or a judge on retrial. In his role as fact-finder, this was Judge Taylor's prerogative. *State v. Blankenship*, 99 Ariz. 60, 65, 406 P. 2d 729, 732 (1965). The role is the same even in cases where the newly discovered evidence involves a third party confession of having committed the crime for which the movant stands convicted. See *Connelly v. United States*, 271 F. 2d 333 (8th Cir. 1959) ; and *Jeffries v. United States*, 215 F. 2d 225 (9th Cir. 1954).

Thus, we cannot find that appellant has presented any extraordinary or compelling circumstances which would require us to find that the trial judge abused his discretion in denying the appellant's motion for a new trial on the ground of newly discovered evidence.

*Judgments affirmed.*