509 A.2d 1227

**David BRIGHT and Marvin Parren**

v.

**STATE of Maryland.**

**No. 1292, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

June 6, 1986.

Certiorari Granted Sept. 8, 1986.

42

Clarence W. Sharp, Assigned Public Defender, of Annapolis, (Alan H. Murrell, Public Defender, on the brief, Baltimore), for appellants.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Edwin Wenck, Asst. State's Atty., for Baltimore City, on the brief, Baltimore), for appellee.

Argued before WILNER, GARRITY and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

David Bright and Marvin Parren, inmates at the Maryland State Penitentiary, were tried and convicted in the Circuit Court for Baltimore City on charges resulting from an altercation with two correctional officers at the prison.

Parren was found guilty of assault, two counts of carrying a deadly weapon openly with intent to injure, and assault with intent to murder. He was sentenced to twenty years imprisonment to run consecutively to the sentence he was already serving on an unrelated charge. Bright was found guilty of two counts of assault and sentenced to six years imprisonment to run consecutively with the sentence he was already serving. Appellants present the following questions on appeal:

1) Whether the trial court erred in not conducting the waiver of counsel inquiry required under Rule 4–215 before it permitted appellants to represent themselves?

2) Whether the trial court erred in its instructions and reinstructions to the jury?

3) Whether the trial court improperly refused to compel the attendance of a witness who was abroad at the time of trial?

4) Whether the State erred in failing to comply with appellants' *pro se* discovery request?

5) Whether the trial court erred in failing to grant appellants' motion for a new trial?

## RULE 4–215 INQUIRY

Appellants first argue that the trial court failed to conduct a proper waiver of counsel inquiry under Rule 4–215 before "permitting appellants to represent themselves at trial." In particular, appellants allege that the trial judge made no attempt to explain the charges or the possible punishments and defenses before accepting their waiver.

Appellants are misguided. They did not truly represent themselves. They requested and were provided with the assistance of counsel throughout the entire trial process. What they received has become known as "hybrid representation"—a form of representation in which the defendant participates in his or her own defense while also retaining the assistance of counsel. Whether to grant hybrid representation when requested is purely within the discretion of

the trial judge. *Wilson v. State,* 44 Md.App. 318, 330, 408 A.2d 1058 (1979), *cert. denied,* 287 Md. 758 (1980).

Both appellants appeared with their respective counsel the morning of their trial. Their indictments were read in full. Appellant Parren, through counsel, requested permission to question some of the witnesses along with counsel. The court granted his request after cautioning appellant that "these are very experienced lawyers. You might make a very big mistake.... Work with your lawyer."

Similarly, appellant Bright, through counsel, requested that he be permitted to conduct his own defense with the assistance of counsel. The court responded that if appellant Bright wanted to try his own case, he had that right, but the court would permit appellant's counsel to sit at counsel table with appellant and allow appellant to consult with counsel throughout the trial. The court then proceeded to engage in an inquiry to determine whether appellant's decision was knowing and voluntary. The court also informed appellant of the benefit of counsel.

Appellant Parren then requested that in addition to assisting with the questioning of witnesses he be permitted to make his closing argument. Appellant added:

"If it takes me to represent myself, [Defense Counsel] sit on the side and assist me, and address the Jury, I agree to do that."

The trial judge granted appellant Parren's request after proceeding through the same inquiry and warnings that he had given appellant Bright.

■ The waiver of counsel inquiry under Rule 4–215 applies in two situations: those in which a defendant appears in court without counsel and those in which a defendant requests permission to discharge an attorney whose appearance has been entered. In *Beard v. State,* 42 Md. App. 276, 288, 399 A.2d 1383, *cert. denied,* 285 Md. 727 (1979), Judge Wilner speaking for this Court stated that the waiver inquiry was not applicable in situations of "hybrid representation." In *Beard, supra,* the defendant had been

represented by counsel throughout the trial but asked at the time of closing argument to argue his case to the jury. Judge Wilner explained:

"This was not a waiver of counsel. Counsel had represented appellant throughout the trial and continued to represent him during his address to the jury and afterward. *Rule 723* [1] *is simply not applicable to this situation.* [Emphasis added.] The inquiry mandated by ... that Rule applies to a defendant's initial appearance and 'to any proceeding at which he appears *without counsel* thereafter.' [Emphasis supplied.] At best, appellant's address may have approached what has become known as 'hybrid representation'...." (Citations omitted.)

*Id.* at 288, 399 A.2d 1383.

■ Appellants in the case *sub judice* requested before trial to participate in varying degrees in their own defense. The question before this Court then is whether granting a request for a participatory role made on the morning of trial amounts to granting *pro se* representation or hybrid representation. To answer this question, we must look at the facts and circumstances surrounding the court's response to such a request. If the totality of circumstances indicates a defendant was granted the right to retain the assistance of counsel while assuming a role in his or her own defense, even though the court may term the right granted one of "self representation," the exact assistance granted may still be one of hybrid representation. The question is one of degree.

Several critical factors an appellate court should consider in deciding whether the court granted self-representation or hybrid representation include: the defendant's immediate and continuous accessibility to counsel; whether the defendant requests permission to or in fact discharges his or her counsel; whether and how often the defendant consults

---

1. Predecessor to Rule 4–215.

with counsel up to the point of the request; the stage at trial in which the defendant requests a participatory role; the magnitude of the role the defendant desires to assume; whether the trial court permits counsel to sit with appellant at counsel table thereby encouraging immediate and constant accessibility, or whether counsel instead is required to remain on the other side of the bar as an observer; what type and the amount of assistance of counsel that has been rendered up to the point of the request including substantive versus procedural aid; the apparent relationship between counsel and the defendant—an outwardly hostile, uncooperative relationship implies a greater degree of independence from counsel's advice and/or disdain for any advice given; and any other salient factors that evince a representation short of *pro se* representation.

Applying the above factors to the case *sub judice*, we hold appellants were not granted the right to exclusively represent themselves. Appellants requested hybrid representation at the beginning of the trial. Their remarks were consistent with a hybrid representation request. That is exactly what the court granted them. While the court characterized the right given as one of self-representation and performed a quasi waiver-of-counsel inquiry, this was a mischaracterization. It clearly granted them a participatory role at trial with attorney representation. The judge recognized that neither appellant ever discharged his counsel. He also had counsel remain at counsel table with appellants and encouraged appellants to consult with counsel throughout their trial. Hence, appellants were never without the advice and knowledge of counsel, although they remain free to accept or reject that advice.

The record of trial bears out the pervasive role the court permitted counsel to assume. Counsel prepared the voir dire, examined State evidence, secured witnesses, participated in bench conferences, and argued jury instructions, reinstructions and motions for judgments of acquittal. The role counsel performed was not merely that of a silent bystander, but instead was that of a substantive litigator. The

record is replete with references to consultations between appellants and their attorneys and reflects numerous occasions in which counsel clarified for the court and jury the thrust of appellants' arguments. Counsel continued to represent appellants throughout their direct and cross-examinations and arguments to the jury.

In short, appellants were never without the assistance of counsel throughout their trial. Counsel served as a continuous, accessible source of legal advice. Thus, appellants' assertions that the court failed to conduct proper waiver inquiries are without merit.

■ In many ways, appellants got the best of both worlds—they were permitted to represent themselves, while retaining the assistance of counsel. They were granted more than they were entitled to under the federal and state constitutions. The court in its discretion could have required appellants to choose between the right to counsel and the right of *pro se* representation. *Wilson, supra.* Appellants cannot now complain because they received exactly what they requested—the assistance of counsel while conducting their own defense.

■ We do, however, point out that in cases in which a defendant asks to participate in some way in his or her own defense at any stage of a proceeding it is better form for the court to conduct a Rule 4–215 waiver inquiry, including explaining to the defendant the charge(s) and possible punishment(s). Although such inquiry is not mandated by the Rule when the request is for hybrid representation, such a rendition insures that the defendant is apprised of the consequences of foresaking any degree of counsel representation and the risks of sharing in the awesome responsibility of defending a criminal charge.

### JURY INSTRUCTIONS & REINSTRUCTIONS

Appellant Bright's next contention relates to the jury instructions and reinstructions given after the jury retired to deliberate.

*Right to Come to the Defense of Another*

It appears that during the altercation in the prison, appellant Bright went to the aid of appellant Parren, who he thought was being assaulted by one of the prison guards.

■ Under Md.Code Ann.Art. 27, § 12A (1957, 1982 Repl. Vol.)

> "[a]ny person witnessing a violent assault upon the person of another may lawfully aid the person being assaulted by assisting in that person's defense. The force exerted upon the attacker or attackers by the person witnessing the assault may be that degree of force which the assaulted person is allowed to assert in defending himself."

The intervenor's right to assist under Art. 27, § 12A, *supra,* is no longer identical to that of the victim's right to defend himself or herself at common law. Under the statute, the intervenor's acts "must be judged on his own conduct, based upon his own observation of the circumstances as they reasonably appeared to him." *Alexander v. State,* 52 Md.App. 171, 183, 447 A.2d 880, *aff'd,* 294 Md. 600, 451 A.2d 664 (1982).

■ The trial judge instructed the jury in the case *sub judice* on the right to intervene as follows:

> "Now, our statute provides, Article 27 Section 12–A, that any person who witnesses, witnessing a violent assault upon the person of another may lawfully aid the person being assaulted by assisting in that person's defense. The force exerted upon the attacker or attackers by the person witnessing the assault may be that degree of force which the assaulted person is allowed to exert in defending himself.
>
> "Our courts have interpreted this statute thusly: That one who is himself free from fault, that's one of the first requirements, may intervene and use force to protect one he perceives to be in danger. You must, as the fact finder, you are fact finders, judge his right of self-defense based upon his own observation of the circumstances that reasonably appeared to him. You must give due

regard to the totality of the circumstances and determine the reasonableness of the defendant in this case ... and whether it was a bonifide [sic] attempt to aid [appellant] Parren. The purpose of the intervention must have been to aid the victim or his rights. Under the statute, our laws, must be to help the other victim and assert the self-defense that the intended victim might have had."

Appellant Bright, relying on *Alexander, supra,* argues that the trial court failed to include in the instruction the fact that appellant Bright was under no duty to determine what was the victim's (Parren's) right of self-defense. Appellant Bright argues that the judge should have instructed the jury that he did not have to determine whether the victim had been at fault before going to his aid.

In *Alexander, supra,* as in the case *sub judice,* a prisoner (Alexander) was convicted of assaulting a correctional officer after coming to the aid of a fellow prisoner (Shreeves) who was involved in a fight with the officer. The trial judge, in that case, instructed the jury as follows:

"Now, as to the defendant Alexander there is an additional factor you have to consider. He has a right to go to the defense of Mr. Shreeves to the same extent that Mr. Shreeves has a right to defend himself. *The defendant Alexander's right of self-defense is the same as that of the defendant Shreeves but no more, no less. In other words, if Shreeves had the right to defend himself, then Alexander had the right to go help him defend himself; if Shreeves did not have the right to defend himself, then Alexander didn't have the right to go help Shreeves defend himself.* He stands in the same shoes as Shreeves when he elects to come to his assistance.

"Now, if you find that the defendant Shreeves is not guilty because he had a right of self-defense, *then you must also find the defendant Alexander not guilty because he would have that same right of self-defense regarding Shreeves,* but if you find that the defendant Shreeves did not have the right of self-defense, then it

necessarily follows that the defendant Alexander cannot claim that right of self-defense on the basis that he was trying to protect the defendant Shreeves." (Emphasis supplied.)

*Id.* at 179, 447 A.2d 880. This Court reversed the conviction on the ground that the judge's instructions improperly evaluated the intervenor's actions based on the victim's right of self-defense.

When reviewing the propriety of a challenged instruction, the Court of Appeals has held that jury instructions are to be read as a whole. *Poole v. State*, 295 Md. 167, 186, 453 A.2d 1218 (1983). While the trial judge in the case *sub judice* did, in the final sentence of his instruction, link appellant Bright's right to intervene with appellant Parren's right of self-defense, when read in their entirety the instructions correctly explained the law under Art. 27, § 12A, *supra*. The trial judge clearly told the jury that they were to judge appellant Bright's right of self-defense "based upon his own observation of the circumstances that reasonably appeared to him," giving "due regard to the totality of the circumstances and determine the reasonableness of [appellant Bright] in this case ... and whether it was a bonifide [sic] attempt to aid [appellant] Parren." The trial judge in *Alexander, supra,* failed to explain that the intervenor's perception determines whether he acted appropriately. In this case, the court adequately explained this. *Alexander, supra,* is, therefore, not controlling. The trial judge did not err in his instructions to the jury.

*Possession Reinstruction*

■ Appellants both object to the reinstruction given by the court in response to notes sent by the jury after they retired to deliberate. The jury sent two questions to the court. The questions as quoted by the court were: "No. 1, we need the law, and they have underlined that, on assault with intent. Is it the same with or without a weapon? No. 2, does one have to be in possession of a deadly weapon before being charged?" After a discussion among the

judge, appellants' counsel, appellants and the prosecutor, the judge answered the jury's first question by giving a reinstruction on assault with intent to murder and added, "[a]nd your second part of your question, is it the same with or without a weapon, and the answer to that is yes, it could be the same with or without a weapon." Appellants do not challenge this reinstruction.

In answering the jury's second question, the judge reinstructed the jury on possession of a deadly weapon. Appellants contend that the court misinterpreted the jury's second question. According to appellants, the jury's second question related to the charge of assault with intent to murder, not to the separate charge of possession of a deadly weapon.

"[R]einstructions to the jury in response to jury questions are totally within the discretion of the trial judge." *Oliver v. State*, 53 Md.App. 490, 505, 454 A.2d 856, *cert. denied*, 296 Md. 61 (1983). While an appellate court may rectify an abuse of discretion, the Court in *Oliver, supra,* stated that "the appropriate response to a jury question is dependent on many factors." *Id.* Quoting from *Kelly v. State,* 270 Md. 139, 143, 310 A.2d 538 (1973), the Court explained that the trial judge is best suited to " 'surmise which of the phrases in his instructions have been absorbed and which should be embellished or repeated.' " *Oliver, supra,* 53 Md.App. at 505, 454 A.2d 856.

There was disagreement among the court, appellants and counsel as to what the jury meant by its second question. The judge had already given a reinstruction on the charge of assault with intent to murder in answer to the first question. Appellants do not contend the reinstruction on possession of a deadly weapon was incorrect in substance. They merely challenge the fact that the trial judge gave the reinstruction.

The decision to give the reinstruction was within the court's discretion. We hold the court did not abuse that discretion in determining that the jury's second question per-

tained to the charge of possession of a deadly weapon rather than merely being an extension of the assault question.

### Aiding and Abetting Reinstruction

■ As a part of his response to the jury's second question, the trial judge also reinstructed the jury on aiding and abetting, reiterating that a person who aided or abetted a principal offender may be found guilty of the principal offense. Appellants argue that once the judge decided to reinstruct on aiding and abetting, he should have also given a reinstruction on self-defense. We see no logical connection that would require that additional reinstruction. The judge's response correctly answered the jury's question on possession. The judge did not abuse his discretion in refusing to reinstruct on self-defense.

### REQUEST FOR WITNESS

■ Appellants assert the trial court erred in denying their request to obtain the presence of Correctional Officer Williams at trial. Williams was one of the prison guards involved in the incident at the Maryland State Penitentiary. Originally, charges were brought against both appellants for injuries to Williams. These charges were dropped at the beginning of trial because, according to the State, Williams had been called to military duty in Okinawa and would be unavailable as a witness.

Subsequently at trial, appellants requested that Williams be summoned as a witness. The trial judge denied their request. When given a chance to proffer what his testimony would be, appellant Parren merely stated that another officer testified that Williams had observed "what exactly took place." After a lengthy discussion, the judge restated his decision not to call Williams as a witness. He stated his ruling was based on the unavailability of the officer and the fact that, according to the proffer, Williams's testimony would merely be cumulative. The judge also pointed out to appellants that much of the testimony elicited from other

prison guards called as witnesses by appellants had, in fact, turned out to be damaging to appellants.

Appellants contend that they have now learned that Williams has returned to duty at the Maryland Penitentiary and that he was not at any time outside the continental United States during his term of military duty. They argue that had they known this at trial, Williams could have been summoned as a witness under Md.Cts. & Jud.Proc.Code Ann. § 9–301 *et seq.* (1974, 1984 Repl.Vol.).

Appellants did not challenge at trial the State's proffer of the officer's whereabouts, and the trial judge did not err in his decision to deny appellants' request to obtain Williams based on their proffer. Further, any information learned by appellants subsequent to trial is not a part of the record and thus is not before us. Rule 1085.

## *PRO SE* DISCOVERY REQUEST

■ Appellants made a *pro se* request for discovery prior to trial which included a request for grand jury minutes. Appellants contend that the State did not respond to this request. We find no merit to appellants' contention. Appellants were represented by counsel prior to and throughout their trial. Consequently, the State was under no duty to respond to their *pro se* requests.

■ Additionally, appellants concede that the State opened its file to their counsel. Since appellants' attorneys cooperated with them throughout the trial, appellants had the advantage of that discovery. Moreover, the court found the grand jury testimony had never been transcribed and hence the State was not required to produce it. *Jones v. State,* 297 Md. 7, 22, 464 A.2d 977 (1983).

## NEWLY DISCOVERED EVIDENCE

Appellants' final assertion is that the court erred in denying their motions for a new trial since a transcript from an adjustment hearing at the prison had not been disclosed or made available to them prior to trial. Although it is not

clear, it appears that appellants attempted to argue at the hearing on the motion that the transcript would have been useful to them because the adjustment hearing testimony of both Officer Williams and Officer Cort could have been used for impeachment purposes. They also argue that they could have used Williams's testimony from the adjustment hearing since he was unavailable at trial.

We are not persuaded by appellants' arguments. The decision of whether to grant a motion for a new trial "lies within the sound discretion of the trial court and its decision upon such a motion will not be disturbed on appeal except for the most extraordinary and compelling reasons." *Couser v. State,* 36 Md.App. 485, 495, 374 A.2d 399 (1977), *aff'd,* 282 Md. 125, 383 A.2d 389 (1978), *cert. denied,* 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156 (1978).

Since appellants contend that they would have used the adjustment hearing transcript for impeachment purposes, under *Jones v. State,* 16 Md.App. 472, 477, 298 A.2d 483, *cert. denied,* 268 Md. 750 (1973), the evidence did not qualify as "newly discovered."

Additionally, appellants argue that the transcript would have been helpful to them because Williams was not available at trial. The parties agreed to admit Williams's report of the incident into evidence. Appellants fail to indicate how the transcript of his testimony would have been anything other than cumulative of that report and the trial testimony of the other officers. Under *Jones v. State,* 16 Md.App. at 477, 298 A.2d 483, cumulative evidence, as well, does not constitute "newly discovered" evidence. Therefore, the trial judge did not abuse his discretion in refusing to grant a new trial.

JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANTS.

WILNER, Judge, concurring.

I write separately in this case only to emphasize the point made by Judge Bell in the concluding paragraph of her discussion of the first issue.

There is, in my judgment, no clear boundary line between hybrid representation and self-representation. Moreover, when, as in this case, a request for some degree of self-representation is made before trial, there is no way that the court ever can know on what side of the murky line the matter will fall. As Judge Bell points out, there are a number of factors to be considered, all of which are necessarily considered *ex post facto*. A trial judge is running a very substantial risk of reversal if he or she does not conduct the full waiver inquiry required by Rule 4–215. I would not like to see that point lost because in this case we are affirming the judgment.