532 A.2d 175

**James William TREECE**

v.

**STATE of Maryland**

**No. 124, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Nov. 5, 1987.

Mark Colvin, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Alexander Williams, Jr., State's Atty. for Prince George's County and Jay Creech, Asst. State's Atty. for Prince George's County, on the brief, Upper Marlboro), for appellee.

Argued before WEANT, GARRITY and POLLITT, JJ.

GARRITY, Judge.

This matter comes before us from the Circuit Court for Prince George's County (Chasanow, J. presiding), where the appellant, James William Treece, was convicted by a jury of

second degree rape and false imprisonment. He asks us to review his trial and determine:

I. Whether the lower court erroneously allowed counsel to proceed on a plea over the appellant's objection;

II. Whether the lower court erroneously refused to grant the appellant a new trial;

III. Whether the lower court erroneously denied the appellant's motion to dismiss the indictment;

IV. Whether the Md. Health–General Code Ann. § 12–109(b) unconstitutionally releases the State of its burden of proof;

V. Whether the lower court erroneously limited counsel to ten peremptory challenges; and

VI. Whether the lower court erroneously refused to allow counsel to make a closing argument to the jury on the issue of criminal responsibility.

### Facts

Over the appellant's objection, a plea of not criminally responsible was entered by defense counsel. As a result of this plea psychiatric examinations were ordered.

The evidence at trial revealed that on October 3, 1985, at approximately 12:15 p.m. the appellant went to the home of his neighbor Mary Garroway (Garroway), where he asked for boxes and to use her telephone. While they were in the family room looking for boxes the appellant grabbed her, removed her clothing and forced her to have sexual intercourse with him. Garroway testified that she was "completely surprised" by the appellant's behavior and that he had never made sexual advances to her prior to that day.

The appellant testified in his defense that he went to Garroway's home to use the telephone. While he was there Garroway offered him some boxes to use in moving. The appellant followed her to the basement to look for boxes and while in the family room Garroway consented to have sexual intercourse with him.

Dr. David Shapiro, a forensic psychologist, administered four psychological tests to the appellant which, Dr. Shapiro testified, indicated that the appellant had a mental disorder but was "desperately trying to deny it." Dr. Shapiro found "evidence of a lot of distortion of reality of an underlying basis that would be consistent with an underlying psychosis" and he noted that the appellant's paranoid state as well as his statements to Garroway were highly consistent with his having been in "an effective psychotic state" at the time of the offense.[1]

Forensic psychiatrist Dr. Neil Blumberg diagnosed the appellant as suffering from a "bipolar disorder, manic-type with psychotic features." Dr. Blumberg defined the appellant's disorder as "what used to be called manic depressive illness." Dr. Blumberg stated that as a result of his interview and examination of the appellant he felt that the

---

1. The appellant's wife of nineteen years testified that they had been separated since approximately two days prior to the incident. She further testified, in pertinent part:

A He would stay up all night long, walk the house, sit on the sofa, look out of the livingroom window, which looks down into the court with binoculars, and watch the cars that were coming in and out of our court up and down the street.
Q Did he ever tell you why he was doing this?
A He said we were being watched.
Q Did he tell you who was watching you?
A Yes.
Q Who was it?
A FBI, CIA, mostly the FBI.
. . . .
A He said Mr. Garroway worked for, if I'm not mistaken, either the FBI or CIA and that Mr. Garroway had agents in his house watching our house.
. . . .
A He would sit down and he would say, "You know, society put me where I am today. If it hadn't been for the FBI and people watching me and watching the family"—he always told me I did not realize what society was doing to our family. He would accuse— one incident is when I bought a car. He said that I did not buy the car, my job paid for the car, that my job owed me the car because they had kidnapped me and they held me against my will and it was their way of showing, of getting me not to testify or bring them to court.

appellant, "was essentially competent to stand trial" but that "on October 3, 1985, Mr. Treece lacked substantial capacity to both appreciate the criminality of his conduct and also lacked substantial capacity to conform his conduct to the requirements of the law."

In rebuttal the State called Dr. William M. Fitzpatrick, a staff psychiatrist at Clifton T. Perkins Hospital Center (Perkins). Dr. Fitzpatrick, as a result of his examination of the appellant, opined that the appellant "was not criminally exonerable because he did not have a mental illness."

A staff psychologist at Perkins, Dr. Lorraine W. McDermott, also testified for the State. Dr. McDermott stated that as a result of her interview with the appellant and review of information provided she believed that the appellant "was responsible at the time of the alleged criminal conduct."

The jury found that the appellant was responsible at the time of the offense and convicted him of second degree rape and false imprisonment. The appellant was sentenced to fifteen years on the second degree rape conviction, and the false imprisonment conviction was merged.

## I. Plea of Not Criminally Responsible

■ The appellant argues that the lower court erroneously allowed his counsel to proceed on a plea of not criminally responsible after the appellant made clear his wish not to proceed on that plea. He contends that as the plea was central to his defense he should have been permitted to decide what plea to make.

The importance of permitting the defendant to make decisions central to his or her defense is well established. One case on point is *United States v. Robertson*, 430 F.Supp. 444 (1977), where the defendant, Thomas L. Robertson, was convicted of second degree murder, assault with intent to kill while armed, and carrying a pistol without a license. Initially, Robertson expressed a desire to assert the defense of insanity but then decided against it and refused to permit his counsel to enter the plea. The Court,

in finding Robertson's decision was rationally and competently reached, reviewed a number of factors, including:

The quality of the evidence supporting the insanity defense; the defendant's wish in the matter; the quality of the defendant's decision not to raise the defense; and, the court's personal observations of the defendant throughout the course of the proceedings against him.

*Id.* at 446.

The Court found: that Robertson consistently expressed his desire not to invoke the insanity defense; that he was consistently found competent to stand trial and to participate in his own defense; that there had not been a past history or prior judicial finding of insanity or incompetence; and that there was no evidence that defense counsel had difficulty communicating with or obtaining assistance from Robertson. *Id.* at 447.

In the case at bar, on behalf of the appellant and without his consent, counsel interposed a plea of not criminally responsible. On the first day of trial, before the jury was brought in and sworn, the appellant made a pre-trial statement to the court. The statement encompassed the appellant's objection to the imposition of the not criminally responsible plea and issues raised in his pro se Motion for Writ of Habeas Corpus. The appellant's statement and the court's response are here repeated in pertinent part:

MR. DENTON: We are prepared to go forward at this time. I know Mr. Treece has filed a pro se request for writ of habeas corpus. I believe he wants to address the Court.

THE COURT: Let me suggest something, though. You've got a good lawyer there, so you might want to talk through him, but I will give you the opportunity if you wish to say anything.

THE DEFENDANT: I would like to make a pretrial statement, in other words.

THE COURT: Go ahead.

THE DEFENDANT: I would like the Court to know that I have been incarcerated for 417 days and that I have never accepted a not criminally responsible plea and fought against it. I was not present at my arraignment and the plea was entered by counsel for me and the fact that I was forced to undergo a mental evaluation, I perceive that to be a violation of my rights under the Civil Rights and Privacy Act. I feel my rights of due process have been denied and under the Sixth Amendment and rights to speedy trial have been violated due to the length of incarceration before trial.

. . . .

In summary, I would request October 3, 1985 I was indicted, and I was arraigned December 20, 1985, and like I said before, my lawyer, Mr. Denton entered a not criminally responsible plea in my absence without consulting me. Trial date was set for May 12th, 1986, well within the 180–day court limit. New trial date was set for August 25, 1986, but before trial I was transferred to Perkins for mental evaluation and was returned on August 26th, '86. Case was continued on September 24, 1986, was continued on October 17, 1986 and again was continued on November 20, 1986. Due to the length of time involved, the number of postponements, about seven altogether, two trial dates set and now a third trial date, I feel this is a clear abuse of discretion and of good cause not showing for violations of my rights to a speedy trial as well as right to due process.

. . . .

THE COURT: I guess where we are is, you are satisfied that, and I assume maybe Mr. Treece, you would be satisfied if the plea was properly filed then the delays were all reasonable. Is that correct?

MR. DENTON: That's my position. I am not sure that's Mr. Treece's position.

THE COURT: Let's get into whether or not it was properly filed.

If the plea was properly filed these are all reasonable delays, aren't they?

THE DEFENDANT: Not in my behalf. It is a plea that I am not going to accept.

. . . .

THE COURT: The dates you have given me are correct.

There is good cause for the continuance if the plea was properly filed. You are not really contesting that, if the plea was properly filed, if you joined in the plea.

THE DEFENDANT: If the plea was properly filed I would say except it should be a clear violation of Hicks rule when trial date was set—

THE COURT: No. If the plea was properly filed that would be a good basis for continuance and that justifies going beyond the 180 days under the Hicks ruling.

THE DEFENDANT: Does it justify taking it up to this point after?

THE COURT: Yes, because some of these continuances, the last one was to get your doctors ready.

MR. DENTON: The last one was at our request.

THE COURT: There were joint requests for examination. So they were all joint requests for examination. So what it really boils down to is that there will be good cause for the continuance if the plea was properly filed. I can't rule on that completely because I haven't heard your doctors. I will defer ruling on that.

. . . .

THE COURT: And let's see. But you understand why whether to file an insanity plea is not the client's decision, it is the lawyer's decision?

THE DEFENDANT: Yes, sir.

THE COURT: Your counsel made a decision. I will wait to hear from the testimony to decide a little bit more

about that. There is no sense bringing those doctors in twice. I am going to hear from them anyway. You can renew the motion at the end of the trial. Okay?

MR. DENTON: Thank you, Your Honor.

THE COURT: As to the speedy trial dismissal, that would follow from this. If there was basis for the plea there is certainly no denial of speedy trial or denial of the right to be tried within 180 days under Hicks. You see that?

THE DEFENDANT: Yes, sir.

THE COURT: So I will let you renew it at the end of the trial and if I decide there was absolutely no basis for the plea you may have a strong case. If there was a basis for the plea, then the reasons for continuances were good ones.

THE DEFENDANT: All right.

At the close of trial the court found:

THE COURT: Mr. Treece, there was certainly ample basis for entering the plea of not criminally responsible by reason of insanity. Based on that I think your counsel is quite right in doing so. You have indicated there would be denial if the plea was properly entered. I am satisfied the plea was properly entered.

THE DEFENDANT: All right.

THE COURT: I will deny your motion to dismiss for lack of speedy trial.

The record clearly indicates that the appellant's opposition to the imposition of the not criminally responsible plea was to buttress his *habeas corpus* motion in which he claimed he was being denied a speedy trial. In essence, he argued at trial that he was denied his right to a speedy trial due to the court's acceptance of a plea to which he had not previously consented.

We hold that, under the circumstances of this case, the lower court properly allowed defense counsel to proceed on the theory that the appellant was not criminally responsible at the time of the offense.

## II. Motion for New Trial

■ The appellant also alleges that his motion for a new trial, based upon his objection to the insanity plea, was improperly denied. We have long held that the ruling of the trial court on a motion for a new trial lies within the sound discretion of the trial court and its decision upon such a motion will not be disturbed on appeal except under the most extraordinary and compelling reasons. *Couser v. State,* 36 Md.App. 485, 495, 374 A.2d 399 (1974); *Jones v. State,* 16 Md.App. 472, 476, 298 A.2d 483 (1973).

It is clear to us that the trial judge painstakingly explained the nature of the proceedings to the appellant, reviewed the evidence which had been presented, and properly exercised his sound discretion in denying the motion for a new trial.

## III. Delay of Trial

■ The appellant moved *pro se* to dismiss the indictment against him. He alleges here that the court's denial of his motion was error as he had not been brought to trial within 180 days of the appearance of his counsel, and as he was denied his constitutional right to speedy trial.

### A.

Maryland Rule 4–271 states in pertinent part that:

The date for trial in the circuit court shall be set within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant ... and shall not be later than 180 days after the earlier of those events. On motion of a party, or on the court's initiative, and for good cause shown, the county administrative judge or that judge's designee may grant the change of a circuit court trial date.

In determining the propriety of a postponement beyond the 180–day limit we look to the order that extended the case beyond the 180th day to ascertain whether Rule 4–271 was satisfied. *Farinholt v. State,* 54 Md.App. 124, 458 A.2d 442 (1983), *aff'd,* 299 Md. 32, 41, 472 A.2d 452 (1984).

Here the relevant postponement order was rendered on April 24, 1986, as the result of a joint request by the State and the defense. It is well settled that when a defendant seeks or consents to a trial date beyond the 180th day the sanction of dismissal is inapplicable. *State v. Brown,* 307 Md. 651, 658, 516 A.2d 965 (1986). Because the appellant was a party, through his counsel, to the postponement request and because the postponement was for a good cause, to have the appellant's competency determined, we hold that the postponement was not a violation of Rule 4-271.

### B.

Equally unavailing is the appellant's allegation that he was tried in violation of his constitutional right to a speedy trial.

 The delay complained of is of sufficient constitutional dimension to require the application of the balancing test set forth in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The four factors to be considered are: (1) length of delay; (2) reason for the delay; (3) defendant's assertion of right; and (4) actual prejudice to defendant.

The appellant concedes that "virtually the entire delay was caused by the not criminally responsible plea filed by counsel, the backlog at Perkins and the misunderstanding between defense counsel and Perkins regarding the need for evaluation." He submits, however, that since the plea was filed over his objection the delay should be charged to the State. We disagree.

 As the appellant has conceded that much of the delay was a direct result of a plea filed on his behalf, the delay is charged to the appellant.

In light of the defense counsel's decision to proceed on an insanity plea, the appellant's *pro se* demands for a speedy trial were in direct contradiction to his attorney's strategic choice to postpone trial in order to prepare the case. In view of our holding that the plea was properly allowed, we

shall not attribute strong evidentiary weight to the appellant's speedy trial assertions.

Finally, although the appellant suffered prejudice, in the form of anxiety, from being incarcerated throughout the lengthy pretrial period, his defense was not prejudiced by the delay. As noted above, the very delay about which the appellant complains was necessary to allow his counsel to prepare the insanity defense.

In essence, as the appellant admits, the delay was attributable to the preparation of *his* defense. We, consequently, conclude that the delay, while of constitutional dimension, did not deprive the appellant of his Sixth Amendment right to a speedy trial.

### IV. Burden of Proof

The appellant asseverates that the Health–General Article § 12–109(b) as drawn relieves the State of its burden to prove *mens rea* and is, therefore, unconstitutional. We disagree.

As to burden of proof, § 12–109(b) provides:

The defendant has the burden to establish, by a preponderance of the evidence, the defense of not criminally responsible.

As to the degree of proof and the verdict, § 12–109(c) provides:

If the trier of fact finds that the State has proved beyond a reasonable doubt that the defendant committed the criminal act charged, then, if the defendant has pleaded not criminally responsible, the trier of fact separately shall find, by a preponderance of the evidence, whether the defendant was at the time criminally responsible or not criminally responsible by reason of insanity under the test for criminal responsibility in § 12–108 of this title.[2]

The Governor's Task Force to Review the Defense of Insanity provided the following comment to § 12–109:

---

**2.** The phrase "not criminally responsible" was substituted for the legal term of "insanity" and "insane" in keeping with the recommendation

Subsection (b) of this section is a significant change recommended by the Task Force. As with other defenses that a State may choose to provide in its criminal law, the State may require the burden of proof to be on the defendant who raises the issue. This change which results in the fact of the defendant's being not criminally responsible being established by the evidence at trial is essential to another important change made by this title on recommendation of the Task Force. The State's right to automatically commit to the Department an individual found not criminally responsible rests on "insanity" being proved by evidence in court. See § 12–111 of this title. *Because being not criminally responsible is an exculpatory fact related to criminal punishment, due process does not preclude placing the proof burden on the defendant.* Similar provisions have been approved by the Supreme Court. "When a criminal defendant establishes by a preponderance of the evidence that he is not (criminally responsible) ... by reason of insanity, the Constitution permits the (State) on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society". *Jones v. United States,* 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983).

Placing the burden on the defendant also avoids the former anomaly of requiring the State to prove sanity beyond a reasonable doubt unsupported by any criteria, standard, or definition of sanity; then, if the State is unsuccessful in proving the defendant sane at trial, requiring the State to prove the same individual insane at a commitment hearing.

Subsection (b) does not alter the State's burden to prove all essential elements of the crime beyond a reasonable doubt. (emphasis added).

---

of the Task Force that the phrase "not criminally responsible" is a more accurate statement of the defendant's status under criminal law.

The Court of Appeals in *Pouncey v. State,* 297 Md. 264, 269, 465 A.2d 475 (1983), specified that a "finding of insanity is not tantamount to an absence of *mens rea,* or inconsistent with a general intent to commit a crime," citing *Langworthy v. State,* 284 Md. 588, 599, n. 12, 399 A.2d 578 (1979). The test for insanity prescribed by § 12–108(a) of the Health–General Article remains the same as that considered by the Court of Appeals in *Langworthy* and *Pouncey.* Thus, the distinction between *mens rea* and the defense of "not criminally responsible" remains intact.[3]

■ Because § 12–109(b) places the burden of proof on the defendant only with respect to the defense of not criminally responsible, we hold that the State has not been relieved under this statutory formulation of its burden to prove beyond a reasonable doubt the requisite *mens rea.*

### V. Peremptory Challenge Allotment

Md.Cts. & Jud.Proc.Code Ann. § 8–301(d) (1974, 1984 Repl.Vol., 1986 Cum.Supp.) was amended on July 1, 1986, reducing from 20 to 10 the number of peremptory challenges allotted the defense in cases involving sentences of 20 years or more. The appellant argues that this is a substantive change in the statute, and that, because he had been charged with committing the offenses before July 1, 1986, the old law should control the conduct of his post July 1, 1986, trial. This contention is meritless.

■ A statute is presumed to operate prospectively from its effective date absent clear language to the contrary, or unless the manifest intention of the legislature indicates

---

**3.** The State acknowledged that in *Bradford v. State,* 234 Md. 505, 200 A.2d 150 (1964), the Court of Appeals' determination that the State bears the burden of proving sanity was premised upon the inter-relationship of sanity and *mens rea.* However, *Bradford* was decided while Maryland adhered to the McNaughton test for sanity. The 1967 modification of the law terminated that relationship. *Gardner v. State,* 41 Md.App. 187, 396 A.2d 303 (1979). And, in any case, *Bradford* was decided upon policy considerations, not constitutional imperatives. *Trimble v. State,* 300 Md. 387, 416, 478 A.2d 1143 (1984).

otherwise. *Mason v. State*, 309 Md. 215, 219, 522 A.2d 1344 (1987).

In *Mason,* the Court of Appeals set forth several well settled rules of statutory interpretation:

(1) A statute is presumed to operate prospectively from its effective date, absent clear language to the contrary, or unless the manifest intention of the Legislature indicates otherwise; (2) *Despite the presumption of prospectivity, a statute effecting a change in procedure only, and not in substantive rights, ordinarily applies to all actions whether accrued, pending or future, unless a contrary intention is expressed;* and (3) A statute affecting or impairing substantive rights will not operate retrospectively as to transactions, matters, and events not in litigation at the time the statute takes effect unless its language clearly so indicates. (emphasis added).

*Id.* at 219–20, 522 A.2d 1344.

█ Despite the appellant's contention to the contrary, § 8–301(d) affects a "change in procedure only" and thus applies to appellant's case. That the amendment is procedural in nature is manifest by the Court of Appeals' contemporaneous change in Rule 4–313 to bring the provisions of that rule of procedure into line with the new statute. Further, the legislative purpose "to reduce operating costs and improve efficiency in the jury selection process in the circuit court," reflects the notion that the legislature intended the statute to apply to all criminal jury trials on or after July 1, 1986. To interpret § 8–301 as appellant requests would thwart the legislative purpose of reducing costs and enhancing administration of the jury trial system.

In short, the change wrought by the July 1, 1986 amendment to § 8–301(a) was procedural and thus applicable to appellant's case. The trial court's limit was, therefore, proper.

## VI. Jury Argument Procedure

In accordance with Health–General Article, § 12–109(b), the trial judge instructed the jury that the defense has the burden of establishing, by a preponderance of the evidence, the defense of not criminally responsible. Following jury instructions, the prosecutor made a closing argument, defense counsel did likewise, and the prosecutor delivered a rebuttal argument. Thereafter, defense counsel, noting that the defense has the burden of proof on the issue of criminal responsibility, approached the bench and stated:

(Conference at the bench, the defendant not being present.)

MR. DENTON: At this time, since we are dealing with a novel situation, the defendant has the burden with regard to criminal responsibility, I am going to ask the Court to let me once again address the jury with regard to only the issue of criminal responsibility since it is my burden, I think I should be permitted to go last. I believe that's what the Legislature opened the door for.

MR. CREECH: Objection.

THE COURT: That's a very interesting point.

MR. DENTON: I will be very brief.

MR. CREECH: I don't think it is proper. I had no way of anticipating. He indicated to the jury he is closed.

THE COURT: You already told them you are not going to get back up.

MR. DENTON: This is a unique situation.

THE COURT: I understand, but you didn't give the State the opportunity of that same thing. You told the jury you were all done.

Make that at an appropriate time and at least I will consider it. I think the State has the overall burden of proof. I think particularly at this time, when you told the jury you were done and State you were done you cannot come up again. That would be unfair, so I will deny it.

MR. DENTON: Note my exception.

MR. CREECH: Thank you.

THE COURT: All right. Let us know in advance. We might give it a little more consideration.

The appellant alleges that he should have been permitted to make a final argument to the jury on the issue of criminal responsibility.

Notwithstanding the allocation to the defendant of the burden of proving lack of criminal responsibility, the State in such cases, as in all criminal cases, carries the ultimate burden of proving guilt beyond a reasonable doubt. *See generally Pouncey v. State*, 297 Md. at 266–68, 465 A.2d 475. Indeed, only after having been convinced beyond a reasonable doubt that the accused is guilty of the crimes charged, does the jury need consider the defense of criminal responsibility and enter a special verdict thereon. *Id.* Because the State at all times carries the burden of proving guilt beyond a reasonable doubt, it is entitled to final argument. Thus, the trial court did not abuse its discretion by denying appellant's unique eleventh hour request.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.